BURCHILL et al. v. HERMSMEYER.
(No. 9021.)

(Court of Civil Appeals of Texas. Ft. Worth. March 8, 1919. Rehearing Denied April 19, 1919.)

1. EVIDENCE ⬳441(9) — PAROL EVIDENCE —VARYING WRITTEN CONTRACT — SALE OF STOCK.

In suit to recover money paid for stock in an oil company upon the ground that at the time the subscription contract, which was in writing, was entered into, the individual defendants orally agreed to return to plaintiff said money in the event oil was not developed, *held* that, aside from the allegations of fraud, evidence of the oral contract alleged was in violation of the rule that parol testimony cannot be received to vary, add to, or subtract from a valid written instrument.

2. EVIDENCE ⬳429 — PAROL EVIDENCE — TO ADD TO WRITTEN CONTRACT—EXCEPTION TO GENERAL RULE.

Where plaintiff at time of execution of written instruments knew that oral contract was not embodied in the writing, he would, to bring himself within the exception to general rule that parol testimony cannot be received to vary valid written instrument, be required to allege and prove that omission was due to accident, mistake, or fraud of defendants; a mere charge that omission was fraudulent being insufficient.

3. FRAUD ⬳41, 50 — PRESUMPTION — PLEADING.

Fraud is never presumed, but must always be proven, and the facts and circumstances relied on must be set out, so that in construing a petition it may be determined whether the facts and circumstances alleged amount to fraud.

4. FRAUD ⬳12 — ACTIONABLE FRAUD — EXISTING FACT OR PROMISE.

The general rule is that a false representation, in order to authorize relief on that ground, must be of an existing fact, and not a promise of something to be done in the future.

5. CORPORATIONS ⬳80(11) — SUBSCRIPTION TO STOCK — RECOVERY OF PRICE PAID — FRAUD—PROMISE—BURDEN OF PROOF.

To hold that oral agreement whereby defendants agreed to return to plaintiff money paid for stock in an oil company in case oil was not developed operated as a fraud, plaintiff must prove that defendants at the time they made the agreement did not intend to fulfill it, but to deceive plaintiff and induce him to advance the moneys which he seeks to recover.

6. CORPORATIONS ⬳80(12) — SUBSCRIPTION TO STOCK—FRAUDULENT REPRESENTATIONS —PLEADING.

In action to recover money paid for stock in oil company, general allegations with reference to fraudulent representations as to existence of oil under the land *held* not to sustain judgment in plaintiff's favor.

7. CORPORATIONS ⬳80(4)—SUBSCRIPTION TO STOCK—STATEMENTS MADE SUBSEQUENT TO TRANSACTION.

Where a subscriber seeks to recover money paid for stock on the ground of fraudulent representation as to existence of oil under company's land, that defendants represented that other oil companies were seeking to purchase their property was immaterial if made long after plaintiff had advanced the sums of money he seeks to recover.

8. CORPORATIONS ⬳80(1) — SUBSCRIPTION TO STOCK — FRAUD — SPIRITUALISTIC REVELATION.

In an action to recover money paid for stock in oil company on the ground of fraudulent representation as to existence of oil under the land, *held* that the representations of the defendants to the effect that spirits had revealed through a medium the existence of oil in valuable quantities beneath the land in question must, under the circumstances of the case, be regarded as insufficient to form a basis for relief asked by plaintiff.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by H. C. Hermsmeyer against Belle M. Burchill and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Templeton & Milam, of Ft. Worth, for appellants.

W. A. Nelson and Slay, Simon & Smith, all of Ft. Worth, for appellee.

CONNER, C. J. This suit was instituted by appellee against appellants, Belle M. Burchill, Edna Burchill, and the Ft. Worth Oil Development Company, a corporation, to recover $10,000 paid for stock in the oil company named. The right to recover is based upon two grounds: First, on the ground of certain alleged false and fraudulent representations, which will be hereinaft-

er indicated; and, second, upon the ground that at the time the stock subscription contract, which was in writing, was entered into, appellants Belle M. Burchill and Edna Burchill orally agreed to return to the plaintiff the said $10,000 in the event oil was, not developed.

The case was submitted to a jury on special issues, which were answered favorably to appellee, and judgment was rendered accordingly in the sum for which he sued.

The record, statement of facts, and appellants' brief are all voluminous. For the most part, however, the assignments of error go to the action of the court in overruling general and special exceptions to appellee's petition, and to the failure of the court to sustain appellants' numerous objections to the evidence offered in support of the supposed objectionable allegations. We think, therefore, that we can probably more clearly dispose of the case by announcing our conclusions in a general way than to undertake a discussion of each assignment. So proceeding, we will first address ourselves to the questions which relate to the alleged oral contract.

To the petition and to the evidence it was objected that the effect of the oral contract was to vary and change, in material particulars, the terms of the written contracts which had been entered into between the parties. Appellee's advancements to appellants were at different times and in different sums, all aggregating the sum for which he sued. For some of these sums a brief written receipt was given which recited that the sums advanced were to be applied on stock payments, or to be applied on stock issued when called for, and at yet other times more formal instruments were executed. To the end that the force of appellants' objections may be more clearly seen, we will set out several of these more extended contracts. The first reads as follows:

"Ft. Worth, Tex., Feb. 10, 1916.

"This receipt witnesseth: That I, Belle M. Burchill, have this day received as trustee, as stated below, from H. C. Hermsmeyer, the sum of one thousand ($1,000.00) dollars, to be applied to the payment of one hundred (100) shares of stock in a corporation to be by her associates hereinafter organized for the purpose of prospecting for oil and developing an oil field on about thirty five (35) acres of land belonging to said Belle M. Burchill and Edna M. Burchill, situated in Tarrant county, Tex., near the eastern limits of the city of Ft. Worth, and known as a part of the old Burchill homestead, which land is to be hereafter conveyed to said proposed corporation. Said corporation is also to acquire leases on other lands in that vicinity for the purpose of drilling for oil, gas, etc.

"The said sum of $1,000 which is this day paid is to be held by said Belle M. Burchill as trustee until said corporation is organized and said stock is issued, when same is to be expended in the development of said field.

"Said H. C. Hermsmeyer shall have the right, at his option, to acquire, if he so desires, an additional five thousand ($5,000) dollars of stock in said corporation at any time prior to April 1, 1916, same to be paid for by him at par as same is taken; all stock to be nonassessable.

"The proposed corporation is to be organized and incorporated with a capital stock of not to exceed fifty thousand ($50,000) dollars. The development of said field is to commence within sixty (60) days from this date and is to be tested for oil and gas on said premises by sinking thereon with reasonable diligence a well not to exceed twelve hundred (1,200) feet, but same may be stopped short of that distance if oil or gas be struck in paying quantities at lesser depth.          [Signed]   Belle M. Burchill.
                              "Edna M. Burchill."

On April 19, 1916, thereafter, oil not having been developed within 1,200 feet, as originally contemplated, appellee subscribed for an additional amount of stock, the subscription being evidenced by a written instrument which reads as follows:

"Know all men by these presents that we, H. C. Hermsmeyer and William Hermsmeyer, of Ft. Worth, Tarrant county, Tex., herewith subscribe eight thousand six hundred and fifty dollars for stock in the Ft. Worth Oil & Development Company, said stock to be issued to the above-named parties when paid for at par and non-assessable.

"Witness our hands this 19th day of April, 1916.          [Signed]   W. G. Hermsmeyer.
                              "H. C. Hermsmeyer."

The payment of the subscription last set out is evidenced by the following instrument executed on July 3, 1916:

"The State of Texas, County of Tarrant.

"Know all men by these presents that this agreement this day made and entered into by and between the Ft. Worth Oil & Development Company of Ft. Worth, Tex., party of the first part, and H. C. Hermsmeyer, party of the second part, witnesseth that said parties have agreed and do hereby agree as follows, to wit:

"I. In consideration that the said second party shall pay to the Palo Pinto Oil & Gas Company the balance due it on well drilling by it for said first party near Ft. Worth, which balance is about four thousand ($4,000) dollars, and in further consideration that said second party has heretofore paid said Palo Pinto Oil & Gas Company the further sum of three thousand dollars, which has been applied on the cost of said well, it is agreed that said second party shall have the right and option to demand of said first party that it issue and deliver to him stock in said Ft. Worth Oil & Gas Company equal in amount at its face or par value to the amount so paid by him to said Palo Pinto Oil & Gas Company, which being done, said second party shall be entitled to all the rights and privileges of a stockholder in said Ft. Worth Oil & Gas Development Company. Such demand for the issuance of said stock to him may

be made by second party whenever he desires to make same.

"II. It is further agreed that said second party shall, if he so desires, increase his subscription to the stock of said company to an amount not to exceed fifteen thousand dollars in all, and to demand the issuance of stock therefor at par value upon the payment of the amount so subscribed for.

"III. Whatever amount is so paid by said second party for such stock in excess of the amounts so paid to said Palo Pinto Oil & Gas Company, viz. about seven thousand twenty dollars, shall be expended by said first party in the development of its oil field near Ft. Worth and in the necessary expense of so doing, provided that no part of said amounts so paid and to be paid by second party shall be used to pay agents' commissions on sale of stock in said development company.

"Witness our hands this the 3d day of July, 1916. [Signed] Ft. Worth Oil & Development Company, by B. M. Burchill, President, Party of the First Part. H. C. Hermsmeyer, Party of the Second Part."

Plaintiff, after setting out in his petition the subscription contract dated February 10, 1916, above quoted, and after setting forth the alleged fraudulent representations which induced its said subscription, thus alleges the oral contract upon which he relies, viz.:

"Plaintiff further avers and alleges that he was induced and caused to pay over the $1,000 by false representations of facts aforesaid and was caused to accept the receipt aforesaid because of the confidence which he had reposed in the defendant Belle M. Burchill that she would return his said money to him unless oil was discovered and had confidence in her to the extent that he did not require her to place said provision in the contract which she and her daughter signed, and avers and alleges that he would have had said oral agreement to return his said money written into said receipt had he not reposed such confidence in the said defendant."

The plaintiff, after setting forth several other receipts for other sums of money and the contract of July 3, 1916, above quoted, further referred to the oral contract in the following terms:

"Plaintiff would further aver and show unto the court that at the time that each of the aforesaid receipts were issued to him and any of said purported contracts entered into that he was completely under the influence and control of the said Belle M. Burchill by reason of the aforesaid false representations of facts and by reason of the aforesaid tricks, artifices, and frauds perpetrated on him, and that he reposed absolute confidence in the said Belle M. Burchill and paid no particular attention to the fact that said receipts were signed, part of them by the Ft. Worth Oil & Development Company, and for the same reason paid no attention to the fact that it was not specifically mentioned in each one of said receipts that plaintiff's money was to be returned to him in the event oil was not discovered, and here avers and alleges that the matter of leaving out the oral agreement on the part of the defendants with this

212 S.W.—49

plaintiff to return his said money unless oil was discovered was the exact fraud defendants were undertaking to and did perpetrate upon this plaintiff by executing and delivering to him the aforesaid receipts."

[1] We are thus brought to the question of whether the plaintiff's allegations show a right to recover upon the oral contract as such. It is hardly to be doubted that the oral contract, declared upon in a very material particular, adds to the written contracts exhibited in the plaintiff's petition. Whether a written contract can be contradicted, varied, or added to by parol is a question that has been fruitful of many discussions. The general rule established by the authorities in its shortest form is that—

"Parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written instrument."

See Jones, Blue Book of Evidence, vol. 1, § 434; Greenleaf on Evidence, vol. 1, § 275. The rule is thus expressed in Seitz v. Machine Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837:

"Undoubtedly the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if under the circumstances of the particular case it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing."

[2, 3] Aside, therefore, from the effect to be given to the plaintiff's allegations of fraud, hereinafter to be noticed, it seems plain that the oral contract, as alleged, is in violation of the rule announced by the authorities we have just cited. The full extent of Mrs. Burchill's and the oil company's obligations is evidenced by written instruments executed at the time, and plaintiff's full right, so far as the instruments themselves indicate, is to be measured by the same instruments in writing. The oral contract, as alleged, was clearly not collateral to the written contracts, but was so closely connected with the written contracts as to form part and parcel of them. In the effort to avoid the force of this construction of the transaction and to bring himself within one of the exceptions to the general rule so as to authorize proof of the contract by parol testimony, the plaintiff alleged that the

omission of the oral from the written contracts had been fraudulently brought about. But, aside from the effect to be given to the alleged fraudulent representations, to be hereinafter discussed, it is to be noted that the petition shows, and his own testimony more particularly discloses, that at the very time of the execution of the written instruments plaintiff then knew that the oral contract, if any, was not embodied in the writing; and plaintiff, to bring himself within the exception to the general rule, would be required to allege and prove that the omission was brought about by some accident, mistake, or fraud of the defendants. A mere charge that the omission was fraudulent on the part of the defendants is insufficient. Fraud is never presumed, but must be always proven, and in all cases of the kind the facts and circumstances relied upon as constituting the fraud must be set out so that in construing the petition it may be determined whether the facts and circumstances alleged amount to fraud.

[4] But, again referring to plaintiff's petition, it must be noted that the pleader makes some general reference to the "aforesaid false representations of the facts, and by reason of the aforesaid tricks, artifices, and frauds perpetrated on him," he was induced to impose absolute confidence in Mrs. Burchill and to disregard the omission of the oral contract from those written. We will therefore now consider what effect is to be given to the oral contract as related to the issue of fraud. The general rule is that a false representation, in order to authorize relief on that ground, must be of an existing fact, and not a promise of something to be done in the future. See Bigham v. Bigham, 57 Tex. 238, cited with approval in Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39. In the latter case, however, an exception to the general rule was recognized. That case was one where the grantor in a conveyance to a right of way sought to cancel the conveyance on the ground of an unfulfilled promise to locate depot grounds, etc., on the plaintiff's lands. In disposing of the case our Supreme Court said:

"To the above rule [the general rule above noted], however, we think that there is a well-founded exception, though there is a conflict in the authorities upon the question. It has been distinctly recognized and announced by the Supreme Court, however, in this state. The exception may be stated as follows, and in reference to the case in hand: If the railway company, at the time it made the representations and promises before mentioned to the plaintiffs, did so with the design of cheating and deceiving the plaintiffs, and had no intention at the time of performing the promises, but used them merely as false pretenses to induce the plaintiffs to execute the deed, and if its conduct did have that effect, then we think that such acts and declarations, coupled with its subsequent utter failure and refusal to perform the promises or assurances, would amount to such actual fraud as would authorize the plaintiffs to have the contract rescinded and the land restored to them. But, upon the other hand, if the promises or representations were made in good faith at the time of the contract, and the defendant subsequently changed its mind and failed or refused to perform the promises, then such conduct of the company, originally or subsequently, would not * * * justify the rescission of the contract or the cancellation of the deed."

[5] To be operative, therefore, as an element of fraud, the burden, at all events, was upon the plaintiff below to show that the defendants at the very time they made the oral agreement, if they did so at all, did not intend to fulfill it, but, on the contrary, then, by so doing, intended to thereby deceive the plaintiff and induce him to advance the moneys he did advance. We have been pointed to no evidence which tends to so show beyond the fact that the promise has not been performed, and this, we think, is insufficient. We accordingly conclude that neither as alleged or proven can the judgment below be sustained on the theory of the oral agreement relied upon.

[6] It remains to be considered whether the general allegations and evidences of fraud presented by the plaintiff are sufficient to sustain the judgment in his favor. The general allegations were, in substance, that the defendants approached the plaintiff and talked to him of the glowing prospects of oil on lands which they owned near the city of Ft. Worth, and represented that a most eminent geologist had made a survey of the land and had reported that oil in paying quantities lay underneath the surface; that plaintiff knew nothing about the oil business and was not acquainted with the character of the country, the formation of the soil where oil might be found, nor with the degree of certainty which geologists might, by an examination of the land, give an opinion as to whether or not oil lay underneath in paying quantities; that defendants represented to plaintiff, as a fact, that the said geologist could tell when oil lay underneath the surface of the land; and that the United State government took the word of said geologist, who represented that he worked for the Standard Oil Company, and had informed defendants that oil lay underneath the lands in paying quantities. It was further alleged, in substance, that when the oil company was incorporated, the capital stock was paid for by the lands owned by defendants which had been estimated at a grossly excessive value; that the plaintiff had been induced to believe that the company would be honestly organized, and had been induced to believe the predictions of the geologist and assurances of the defendants as to the existence of oil on the land:

and that Mrs. Burchill "had gained his (plaintiff's) confidence to the extent that he believed that she was telling him the truth about the Spiritualistic predictions that oil underlay her said land." There were further allegations to the effect that defendants had represented that the Standard Oil Company and other companies had made an effort to secure their lands for the purpose of testing the field for oil, etc.

While, inferentially, the petition presents allegations of false representations that are material, as, for instance, that the geologist had investigated defendants' lands and had given opinions favorable to the existence of oil thereunder, and that the lands for the purpose of developing oil had been sought by the Standard Oil and other oil companies who might reasonably be supposed to so act because of a well-founded belief of the existence of oil under said lands, yet, in the nature of things, many of the allegations made relate to mere matters of opinion which are wholly insufficient to constitute a support for plaintiff's action. In the very nature of the subject it must be known that neither a geologist nor any other person can predict with absolute certainty the existence of oil underneath undeveloped tracts of land, and neither the opinion of the geologist nor of the defendants could legally have been accepted by plaintiff as an absolute fact, and, when we come to the evidence of this case, it is much less forceful than the allegations. The plaintiff testified at great length at the trial, but it does not appear from his testimony that the defendants' statements to the effect that the geologist had passed favorably upon the lands in question were false. They may, indeed, have given the most favorable opinions on this subject. So far as the record shows, the defendants themselves may have had the utmost faith in the existence of oil under their lands, and they may have believed with all sincerity in such fact.

The representations as to the value of the lands in procuring the charter for the incorporation cannot be accepted as a basis for fraud in this case. While it was shown by the evidence on the trial by several witnesses that the value of the lands was much less than that represented to the secretary of state, yet the opinions of the parties who made the several estimations were, at most, mere estimates. The lands for farming or ranching purposes or for a city addition may have been worth, in the opinion of witnesses, a given value, while a much greater value would be placed thereon by persons actuated by a belief of the existence of oil thereunder, and which it was proposed to develop. The question of the value of these lands could only be material in an action on the part of the state to annul the charter, or in an effort on the plaintiff's part to cancel his subscription contracts and for damages, but

this he has not sought to do, other than as is perhaps to be implied from his effort to recover the amount of money paid in by him.

[7] Plaintiff's allegation that the defendants represented that other oil companies were seeking to purchase their property for oil-developing purposes was immaterial, and should have been rejected for the reason that these statements on the part of the defendants, if made, occurred long after the plaintiff had advanced the sums of money he seeks to recover. And for the same reason, if for no other, the evidence of the plaintiff should have been rejected to the effect that at the instance of the defendant Belle M. Burchill he had visited a Spiritualist in Dallas, and therefrom had received encouragement.

[8] There was considerable other evidence relating to Spiritualistic communications as to the existence of oil underneath the lands in question, and we should perhaps notice the subject a little more particularly. We do not care to say that spirits from the great beyond may not visit and communicate with the living, nor that it is impossible for man's spiritual powers to be so developed and purified as to constitute a medium for communication with disembodied beings, for the phantasm of to-day is so often a reality of to-morrow. But these subjects belong to realms and powers that as yet must generally be classed as purely speculative, and not so established by evidences cognizable by the law which we are required to administer as to be classed as facts—as among proven things. Indeed, we think it may be said that a belief that the living, through the agency of a medium, can receive authentic information from the spirits of the dead, is, in the general acceptance of mankind, a species of delusion, and that such communications, in general acceptance, are of too unsubstantial a character to be received as representations of fact. We think, therefore, that the representations of the defendants, if any, to the effect that spirits had revealed, through a medium, the existence of oil in valuable quantities beneath the lands in question, must, under the circumstances of the case, be regarded as insufficient to form a basis for relief to plaintiff.

But if under any possible set of circumstances representations of the character mentioned could be made the basis of equitable interposition, the present suit presents no such case. There is no allegation that the plaintiff is mentally deficient or wanting in ordinary business acumen, nor evidence that the medium mentioned in the testimony did not, in fact, give the assurances imputed to him, or that defendants themselves were without confidence therein. Indeed, it is not shown that the test well undertaken by the parties to this litigation has been entirely abandoned. So far as the evidence called to our attention shows, the work may now be

continuing, and, while the oil has not been developed as near the surface as was contemplated, the truth of the spiritual prophecy that oil in paying quantities is to be found beneath the lands of the defendants may yet be demonstrated.

It should be further said on this branch of the subject that some of the spiritual revelations relied upon were made subsequent to plaintiff's subscription and payment for stock, and hence in no event could have been an inducement therefor. The communications detailed at greatest length and apparently most relied upon by plaintiff were those of Mr. Kaiser designated as a medium, who assured plaintiff that "the oil is there all right; he said he saw it, saw the oil there, and he was sure of that, and he thought it was down 600 feet." These assurances, however, as shown by the evidence, were given to plaintiff first in the absence of the defendants, and we fail to find any evidence that either of the defendants authorized or incited the medium named to make the statements. Indeed, it seems difficult to point out any theory sustained by the pleadings and evidence in this case which will support the judgment as actually rendered in plaintiff's favor.

As before observed, the plaintiff does not, in direct terms, seek to cancel his subscription contracts and recover damages because of a depreciated value of his stock in the corporation and tender a return of such stock. Nor is there any clear showing, so far as we have been called upon to consider the record, that the corporation is not a solvent going concern, or that its stock is worthless, or that the right secured by plaintiff in his subscription contracts to acquire additional stock at par is without value. On another trial the record should not be left in doubt on these matters; for it needs neither argument nor citation of authorities to support the proposition that plaintiff cannot retain the benefits, if any, of these subscription contracts and at the same time recover the money paid therefor.

We conclude that the judgment should be reversed, and the cause remanded for a new trial in accord with the views we have indicated.

Judgment reversed, and the cause remanded.