Jack L. MORGAN, et al., Appellants,

v.

AMARILLO NATIONAL
BANK, Appellee.

No. 07–84–0194–CV.

Court of Appeals of Texas,
Amarillo.

Nov. 7, 1985.

Rehearing Denied Dec. 9, 1985.

Phillip R. Russ, J.L. Haley, III, J. Geary Grimes, Amarillo, for appellants.

Michael V. Powell, Dallas, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Limited partners in a partnership were summarily adjudged liable on their respective written guaranty agreements securing the payment of two notes to Amarillo National Bank.[1] Eight of the partners—Jack L. Morgan, Gary Jarmon, Larry D. Patton, M.C. Kratz, Jr., O.T. McCall, Canalino Resources, Inc. as successor in interest to Energy Associates, Gemini Lacquers, Inc., and Chock, a partnership—have appealed,[2] contending that their defense of usury and

the existence of material fact issues preclude the rendition of summary judgment. We affirm.

In 1981, each of the appellants and others, as limited partners, and GSM International Drilling Service, Inc., as the general partner, executed a partnership agreement for the purpose of forming a limited partnership to engage in the contract drilling business by acquiring and operating one or more drilling rigs. The general partner was granted the exclusive responsibility and authority to, among other things, arrange the financing of the rigs and all equipment and to borrow money on behalf of the partnership, using as security therefor any property of the partnership. In order to secure financing for the rig, each limited partner was required to execute a guaranty in a maximum amount proportionate to his partnership interest and the financed portion of the cost of the rig.

Thereafter, in March of 1982 and for the purpose of purchasing a drilling rig, the general partner executed and delivered to Amarillo National Bank a loan agreement, by which the bank agreed to lend and the general partner agreed to borrow $2,750,-000, evidenced by two notes executed and delivered by the general partner to the bank. One note was in the principal amount of $2,250,000 and the other was in the principal amount of $500,000, with interest at the rate of "1% over RB Prime rate floating" from date to maturity, it being specified that "[a]ll past due principal and interest shall bear interest at the highest lawful rate until paid." The payment of each note was secured by a first and superior security interst in the drilling rig, as well as guaranteed by the individual guaranty in a stated sum of each limited partner. The guaranty, limited to the stated amount guaranteed, specified that the limited partner-guarantor

---

1. The limited partners adjudged liable are Robert D. Grace; Jack L. Morgan; Gary Jarmon; Larry D. Patton; M.C. Kratz, Jr.; George H. Musgrave; O.T. McCall; Energy Associates; Gemini Lacquers, Inc.; Chock, a partnership; and Geothermal Services & Management, Inc.

2. Robert D. Grace, George H. Musgrave, and Geothermal Services & Management, Inc. have not appealed.

does hereby unconditionally guarantee to Bank ... irrespective of the genuineness, validity, regularity, or enforceability [of the notes] or any other circumstances, the prompt payment of [the notes] when due, at maturity, whether by demand, acceleration, or otherwise, and further, consents that from time to time, without notice to Guarantor, [the notes] may be extended or renewed in whole or in part or the rate of interest thereon may be changed, without affecting the liability of Guarantor. The signature hereto is intended, also, as an endorsement of [the notes], and Guarantor hereby waives presentment, demand or [*sic*] payment, protest and notice of nonpayment and of protest and in [*sic*] any and all other notices and demands whatsoever.

Further, the guaranty provided that upon default in the payment of the notes, the bank, without the necessity of first proceeding against the maker, may demand performance by the guarantor under the guaranty without being required to collect ratably from the general or any limited partner under other guaranties.

On 17 October 1983, after the $500,000 note was due and unpaid for more than a year and no payment had been received on the $2,250,000 note in excess of one year, the bank gave notice to the general partner of default, acceleration and demand for payment of the notes. The following day, 18 October 1983, the bank gave written notice by certified mail to appellants of the default in payment of the notes and demanded that they honor their guaranty agreements, the notice further stating:

This letter also constitutes your formal notice pursuant to Section 9.504(c) of the Texas Business and Commerce Code that Amarillo National Bank has repossessed the drilling rig described in the above-referenced Security Agreement and intends (without making an election of remedies) to hold such drilling rig for foreclosure by private sale. You are hereby given notice that the drilling rig may be sold pursuant to private sale on or after November 1, 1983.

The next day, 19 October 1983, the bank filed the action underlying this appeal to enforce the collection of the respective guaranty agreements of appellants and other limited partners. Upon appellants' failures to honor their guaranty agreements, the bank sold the drilling rig for $850,000 at a private sale to a subsidiary of a guarantor not made a party to this action and credited the proceeds to the notes.

Subsequently, on 6 June 1984, the court granted the bank's motion for summary judgment, opposed by appellants on the grounds of pleaded affirmative defenses and the existence of genuine issues of material fact, and rendered judgment. By its judgment, the court decreed that the bank recover from each appellant an amount consisting of the sum he or it guaranteed to pay and the calculated prejudgment interest thereon, together with stipulated amounts of attorney's fees for trial and appeal, to bear interest at the rate of 10% per annum from the date of judgment until paid.

Appellants have appealed with eight points of error. By their first point, they seek a reversal and rendition; by their remaining points, they seek a reversal and remand.

Initially, appellants contend that, under their affirmatively pleaded defense of usury, they are entitled to a reversal and rendition of a take-nothing judgment on the bank's action because the bank charged, for the bulk of the period after default, more than double the amount of interest statutorily specified for interest on the notes after default, thereby causing the bank to forfeit all principal, interest and all other charges. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(2) (Vernon 1971). This obtains, appellants argue, because (1) the bank continued to charge interest after maturity "at the rate of 1% over the 'RB Prime Rate'," charging at rates of 11.5% to 17.5% per annum; (2) the provision in the notes for interest after maturity "at the highest lawful rate" is not a specification for a definite interest rate; and (3) without an agreement for a specified rate of interest, "interest at the rate of 6% shall be allowed on ... contracts ascertaining the

sum payable ...." *See* Tex.Rev.Civ.Stat. Ann. art. 5069–1.03 (Vernon Pamp.Supp. 1971 to 1985).

▮▮▮ The contention must fail, for its basic premise—that the provision for interest after maturity "at the highest lawful rate" is not a specification of a definite interest rate—is faulty. Parties may agree, as the parties here provided, that past due principal and interest shall bear interst at the highest lawful rate. *Bundrick v. First Nat. Bank of Jacksonville*, 570 S.W.2d 12, 15 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Since the provision for post-maturity interest does not expressly entitle the bank to exact interest at a rate greater than that allowed by law, neither note is usurious on its face. *Smart v. Tower Land and Inv. Co.*, 597 S.W.2d 333, 341 (Tex.1980). Moreover, the highest lawful rate for which the parties contracted for the type of loan involved in this cause is established, with a minimum and maximum usury ceiling of, respectively, eighteen and twenty-eight percent, by the published calculations of the consumer credit commissioner. Tex.Rev.Civ.Stat.Ann. art. 5069–1.-04 (Vernon Pamp.Supp.1971 to 1985); Hightower, *The Current State of Usury Law in Texas*, 14 St. Mary's L.J. 149 (1983). Appellants' presentatnion of their contention demonstrates that the rate of interest charged after default never exceeded the highest rate allowed by law. The first point of error is overruled.[3]

Appellants assert with their subsequent points of error, two through eight, that the trial court erred in granting the bank's summary judgment motion because they raised material fact issues. Point two is their contention that they raised material fact issues concerning adequate notice of the sale of the collateral securing payment of the notes. In their argument under the point, they do not suggest that the notice was inadequate in content; instead, they

first argue, by reference to statements in two affidavits—one by Ronald L. Ripley and the other by Jerry O. Ellis, the secretary and president, respectively, of Canalino Resources, Inc.—submitted in response to the bank's motion, that the notices of sale mailed by the bank were not served on appellants until after the bank had initiated its suit in the trial court. In this regard, it was established by admission that the notice was received by Energy Associates, or its successor Canalino Resources, Inc., on 24 October 1983, and by documentary evidence that the private sale of the collateral was finalized on 8 December 1983.

▮▮▮ Aside from the reality that in the referenced statements, the affiants, contrary to the record and to appellants' argument, said that the notices were not served on the defendants and were not mailed until after the proceedings were instituted, if appellants mean to contend that the notices were inadequate because they were mailed before and received after the bank filed its action, the point is not well taken. Under the circumstances of this cause, section 9.504 of the Texas Business and Commerce Code sanctioned the bank's sale of the collateral by private proceedings under commercially reasonable conditions following the sending by the bank to appellants of

> reasonable notification of the time after which any private sale ... is to be made
>
> ....

Tex.Bus. & Com.Code Ann. § 9.504(c) (Vernon Supp.1985). "Reasonable notification" is not defined in the section, but clearly there is no requirement that for the notification to be reasonable, it must be given or received at some particular time in relation to the institution of litigation concerning the transaction. Therefore, the trial court cannot be faulted for determining that as presented, the ground—*i.e.*, the fact that

---

**3.** Even if we agreed with appellants' basic premise that the provision for interest after maturity "at the highest lawful rate" is not a specification of a definite interest rate, their point still would be overruled. In the event the rate of interest after maturity is not specified for an interest-bearing note, the post-maturity rate of

interest is not the statutory 6% rate appellants say is applicable; instead, the post-maturity rate is by implication the pre-maturity rate, *Petroscience Corporation v. Diamond Geophysical, Inc.*, 684 S.W.2d 668, 668–69 (Tex.1984), and appellants do not suggest that the agreed upon pre-maturity rate of 1% over prime is usurious.

the notices were not received by appellants until after the bank's action was instituted—was not a reason to defeat the bank's motion for summary judgment.

But that determination is not sufficient for a complete disposition of appellants' second point. Because of the absence of a definition of "reasonable notification," the time of notification, as explained in the fifth official comment on the section, must be such that the debtor will have sufficient time to take appropriate steps to protect his interests by taking part in the sale, if he so desires. In the light of this comment, appellants make reference to exhibit 23 to the deposition of Jack O. McCall, Jr., vice-president of the bank, as establishing that the bank had contracted to sell the collateral on 11 October 1983, prior to the times the bank gave notice and instituted its suit. Then, they next argue, there exists the fact issue whether they were prohibited from participating in the sale of the collateral because a binding contract had been entered into before they were notified of the proposed sale.

■ The immediate difficulty with the argued ground, which pretermits a discussion of its merits, is that appellants do not propose, and in considering their responses we did not find, that they expressly presented this ground to the trial court as a reason to defeat the bank's summary judgment motion. As a consequence, they cannot assign the ground on appeal as a reason to avoid the bank's summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979). The second point of error is overruled.

■ With their third point, appellants contend they raised material fact issues concerning the commercial reasonableness of the sale of the collateral. This contention that the secured party failed to dispose of the collateral in a commercially reasonable manner is treated as an affirmative defense, *Ward v. First State Bank*, 605 S.W.2d 404, 407 n. 5 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.), which requires appellants, once the bank moved for judgment on the strength of the notes with credits thereon and the written guaranties of payment, to produce summary judgment proof raising a fact issue on their defense, *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473, 474 (Tex. 1965), to defeat the bank's summary judgment motion. *Nichols v. Smith*, 507 S.W.2d 518, 520 (Tex.1974).

To defeat the bank's motion, appellants argue there is evidence that (1) although the bank sold the collateral for $850,000, a sum they do not suggest was commercially unreasonable, the sale was to a subsidiary of a co-guarantor which was released from its guaranty, thereby "resulting in approximate net proceeds from the sale of $150,-000.00, which sum is far below the reasonable market value of the drilling rig," and (2) the bank's agents misrepresented certain facts concerning the sale, and withheld notice of the sale until this suit was filed, in an effort to prevent appellants from taking any action to protect their interest in the collateral. However, the portions of the deposition of McCall and the affidavit of Ripley noticed by appellants as raising the argued fact issues of commercial unreasonableness are insufficient for that purpose.

■ The deposition of McCall, although evincing the release of the guaranty by the co-guarantor to whose subsidiary the collateral was sold for $850,000, evidences that the full $850,000 was credited to the balances then due on the notes, thereby belying appellants' argument that the net proceeds from the sale were approximately $150,000. Moreover, by making the argument, appellants tacitly advocate that it was commercially unreasonable for the bank to release the co-guarantor's guaranty contemporaneously with the sale of the collateral; but the advocation is unsound, for their individual guaranties are absolute, rather than conditional, ones by which they waived any requirement that the bank collect ratably from any other guarantor as a condition precedent to their individual liabilities. *Universal Metals & Machinery, Inc. v. Bohart*, 539 S.W.2d 874, 877 (Tex. 1976).

■■ Additionally, appellants' references to portions of Ripley's affidavit are to conclusionary averments, or averments which Ripley "is informed, and verily believes." It is, of course, axiomatic that an affidavit consisting of conclusions is insufficient to raise an issue of fact, *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); and, since an affidavit is insufficient unless the allegations contained therein are direct and unequivocal and perjury can be assigned upon it, *id.*, Ripley's affidavit upon information and belief is insufficient as factual proof in this summary judgment proceeding. 4 R. McDonald, Texas Civil Practice in District and County Courts § 17.26.5 (rev.1984); *Rausheck v. Empire Life Insurance Co. of Amer.*, 507 S.W.2d 337, 339 (Tex.Civ.App.—Texarkana 1974, writ ref'd n.r.e.). Consequently, the third point is overruled.

■ Akin to appellants' third point is their fourth-point contention that they raised material fact issues concerning impariment of the collateral securing the notes. The contention is premised on the statutory provision that:

(a) The holder discharges any party to the instrument to the extent that without such party's consent the holder

\* \* \* \* \* \*

(2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

Tex.Bus. & Com.Code Ann. § 3.606(a)(2) (Vernon 1968). The impairment contention is an affirmative defense, *Crimmins v. Lowry*, 691 S.W.2d 582, 585 (Tex.1985), and by presenting it, appellants assumed the burden of producing summary judgment proof raising a fact issue with respect to the defense. *Nichols v. Smith, supra.*

Coupled with their reiterated questioning of the adequacy of notice, the release of the co-guarantor's guaranty, and the alleged misconduct of the bank's agents, which we previously noticed to be unavailing in their presentment to defeat the bank's summary judgment motion, appellants centrally complain that the bank failed to contact sources other than those consulted to ascertain the fair market value of the drilling rig. Citing the legalism that if the collateral is negligently sold so that it produces less than the full market value, the guarantor may set off the full value of the security against the amount remaining due, appellants conclude that the bank's failure to exercise good faith in disposing of the collateral constitutes, or raises a fact issue whether there was, a negligent impairment of the collateral, justifying their discharge from their guaranties.

■ The impediment to sustaining the contention is that although the affirmative defense is based on pleaded issues expressly presented to the trial court, the defense is without supporting proof, a necessary requirement to defeat the bank's motion. *City of Houston v. Clear Creek Basin Authority, supra,* at 678. Appellants do not, either by proof or allegation, challenge the summary judgment evidence that the $850,000 received for the drilling rig was its commercially reasonable value at the time of the private sale, that the full amount was actually credited on the notes, and that the rig probably would bring only $300,000 if sold at public sale. They do not point to any evidence of action by the bank that would have resulted in a greater, or in reality produced a lesser, price for the collateral than was received. In short, they failed to adduce any competent evidence to raise an issue of the bank's impairment of the collateral as alleged. The fourth point is overruled.

■ By their fifth point, appellants contend they raised material fact issues concerning whether their guaranties were induced as a result of fraud, coercion, or duress. The contention is developed in three stages: first, appellants assert that the bank omitted to disclose material facts about which limited partners did or did not sign a guaranty, and who had been released from their guaranties; second, they maintain the bank made misrepresentations of material facts concerning the receipt and release of guaranties by the limited partners; and third, they say that the bank,

individually and in concert with another, obtained their guaranties under duress or with the threat of coercion. However, the facets of the contention that the bank omitted to disclose material facts and secured the guaranties by duress or coercion were not expressly presented to the trial court as grounds to avoid the bank's entitlement to summary judgment under the contention now made and, as a consequence, these divisions of the contention are not eligible for consideration on appeal. *City of Houston v. Clear Creek Basin Authority, supra,* at 678–79.

With respect to appellants' contention of misrepresentation, the record reveals that the guaranties made the subject of the bank's action were executed on various dates in 1982. The misrepresentations charged to the bank, which appellants allege they relied on in extending their guaranties, were made by McCall, according to Ripley's affidavit upon which appellants depend, on or about 31 January 1983.

■ One of the essential elements of fraud is that the person allegedly injured by a misrepresentation actually relied on the misrepresentation. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983). Thus, fraud does not exist if a misrepresentation did not induce the transaction, *Dowlin v. Boyd,* 291 S.W. 1095, 1098 (Tex. Comm'n App.1927); so, a subsequent misrepresentation will not be considered in determining whether an instrument was obtained by fraud. *Campbell v. Turley,* 224 S.W. 528, 529 (Tex.Civ.App.—San Antonio 1920, no writ); *Burchill v. Hermsmeyer,* 212 S.W. 767, 771 (Tex.Civ.App.—Fort Worth 1919, no writ). *See also, Banks v. Merritt,* 537 S.W.2d 494, 496–97 (Tex.Civ. App.—Tyler 1976, no writ).

It follows that by relying on statements, if indeed they constituted misrepresentations, made subsequent to their execution of their guaranties, appellants not only failed to raise a fact issue on, but negated, an essential element of their affirmative defense of fraud. The fifth point is overruled.

They raised, so appellants contend with their sixth point, material fact issues concerning negligence of the bank. In attempting to defeat the bank's motion in the trial court on a factual issue of negligence, appellants presented the negligence as "the bank's acts of both omission and commission;" as "the failure of the [bank] to follow normal banking standards in the preservation and disposition of collateral;" as "the bank's negligence in dealing with the makers and guarantors of the notes;" and as "the failure of [the bank] to use reasonable and ordinary care in the preservation of the property of the makers of the note [*sic*]." Recognizing that the presentation was less than specific, appellants alleged that completion of discovery would enable them to identify the fact issues with greater specificity; however, they did not make any other specification of the fact issues to the trial court.

In attempting to avoid the bank's summary judgment in this Court, appellants generally assert that fact issues were raised with regard to the bank's negligence in handling the loan transaction for which appellants were guarantors. Their particularization of negligent fact issues is expressed to be "as to the reasonableness of the disposition of the collateral, particularly the conduct of the sale and the amount of proceeds realized;" that "Appellants were provided no information with regard to the amounts realized from the sale, and were not provided with any information regarding the circumstances of the sale. In particular, Appellants were not informed as to the identity of the purchaser, or the amounts of payments, offsets, and credits received;" and "in releasing certain guarantors on the indebtedness ... and with respect to substitution of worthless guaranties in place of good and sufficient guaranties." These allegations of negligence, appellants represent, are supported by the affidavits of Ripley and Ellis, to which they direct us by a blanket reference to the entire 135 pages of the affidavits.

At the outset, it is obvious that appellants' trial court presentation of negligent fact issues in their response to the bank's motion was, as they at least tacitly conveyed in the response, too general to fairly

apprise the bank and the trial court of the precise issues they then contended should defeat the motion. *City of Houston v. Clear Creek Basin Authority, supra,* at 678. It is equally obvious that the negligent fact issues asserted on appeal are not those presented to the trial court, but are new and different articulations which may not be assigned on appeal. *Id.* at 679. Beyond that, and aside from any previous address made to some of the matters asserted, the appellate generalizations are not supported by any character of evidence set out in appellants' brief. It is not our duty to independently search through the 135 pages of affidavits to seek and speculate on the proof which, under our briefing rules, appellants had the duty to extract to entitle them to a consideration of their sixth point of error. *Saldana v. Garcia,* 155 Tex. 242, 285 S.W.2d 197, 200–01 (1955). Accordingly, the point is overruled.

With their seventh point, appellants advance the contention that material fact issues were raised as to the payments, offsets, and credits on the underlying indebtedness. They argue that the fact issues were raised in their second amended answer and in their reply to the bank's summary judgment motion and are supported by the affidavits of Ripley and Ellis, to which, again, appellants direct our attention by a blanket reference to the entire 135 pages of the affidavits.

Assuming that appellants' reply to the bank's motion was sufficient to expressly present to the trial court the issue of payments, offsets, and credits on the notes, it is elemental that the pleadings by way of answer to the bank's action and reply to its motion do not constitute summary judgment proof of the issue pleaded. *City of Houston v. Clear Creek Basin Authority, supra,* at 678. As just noted in the address of appellants' sixth point, the blanket reference to the affidavits is alone insufficient to demonstrate proof of an unresolved fact issue to defeat the summary judgment motion, *I.P. Farms v. Exxon Pipeline Co.,* 646 S.W.2d 544, 545 (Tex. App.—Houston [1st Dist.] 1982, no writ); however, in this instance, appellants assert that the affidavits show the bank did not provide them with any information upon which they could determine the balance owed on the notes for which they furnished the guaranties.

Apart from the reality that appellants deposed McCall and questioned him about the disposition of the collateral and the application of the proceeds from its sale, the showing of a lack of information shows no more than that there is an absence of summary judgment proof to raise a fact issue to defeat the summary judgment motion for the reason presented. Even if the assertion of a lack of information could be construed as a statement that all credits have not been allowed on the notes, it would be a mere conclusion that is insufficient to raise an issue of fact regarding the credits shown on the notes. *Life Ins. Co. of Virginia v. Gar-Dal, Inc.,* 570 S.W.2d 378, 382 (Tex.1978). The seventh point is overruled.

Appellants utilize their eighth and final point of error to contend that there remains a material fact issue concerning the validity of the guaranty of appellant Chock, a partnership, because Ripley's affidavit sets forth facts, the reference to which is once again a blanket reference to the 135 pages of affidavits, showing Chock believed its guaranty had been refused. The brief answer to the contention is that, since it was not expressly presented to the trial court as a reason to defeat the bank's summary judgment motion, it is not cognizable on appeal as a ground to avoid the summary judgment rendered. *City of Houston v. Clear Creek Basin Authority, supra.* The point is overruled.

The judgment is affirmed.