

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00079-CV

CAMARGOCOPELAND ARCHITECTS, L.L.P., Appellant

V.

CRT SIGNATURE PLACE, L.P., Appellee

On Appeal from the 68th District Court
Dallas County, Texas
Trial Court No. DC-12-09362

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

CRT Signature Place, L.P. (CRT), sued CamargoCopeland Architects, L.L.P. (Camargo), for breach of a lease agreement. The 68th Judicial District Court of Dallas County granted summary judgment in favor of CRT and awarded $515,059.68 in actual damages.[1] Camargo challenges the court's ruling on appeal, arguing that CRT's proof of the damage element "does not constitute competent summary judgment proof" because the affidavit relied on was "conclusory in nature." We disagree with Camargo's assertion that the "only summary judgment evidence . . . was the Affidavit of Lisa Donovan" or that Donovan's affidavit was conclusory, find that the record sufficiently established CRT's damages claims, and affirm the trial court's judgment.

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review de novo the grant or denial of a motion for summary judgment "to determine whether a party's right to prevail is established as a matter of law." *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied) (citing *Fielding*, 289 S.W.3d at 848).

When reviewing the grant of a traditional summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any

---

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

doubts in the nonmovant's favor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the movant must show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *McNamara*, 71 S.W.3d at 311; *Steel*, 997 S.W.2d at 223; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex. 1979).

To prevail on its claim for unpaid rent, CST was required to prove (1) the existence of a valid contract, (2) its performance or tendered performance, (3) Camargo's breach of the contract, and (4) damages as a result of the breach. *See Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 797 (Tex. App.—Dallas 2013, no pet. h.) (citing *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007, no pet.)). Only the last element is at issue in this case.

"To defeat a plaintiff's cause of action on a traditional motion for summary judgment, the defendant must either 'conclusively negate an element of the plaintiff's claim or conclusively establish every element of an affirmative defense.'" *Id.* at 795 (quoting *Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*, 244 S.W.3d 885, 888 (Tex. App.—Dallas 2008, pet. denied)). "A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence." *Id.* (citing *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.)). "The defendant, however, is not required to respond with evidence if deficiencies in the plaintiff's own proof or legal theories will defeat the movant's right to judgment as a matter of law." *Id.* (citing *Clear Creek Basin Auth.*, 589 S.W.2d at 678).

Camargo entered into an agreement to lease 6,597 square feet of office space from CRT for a term beginning October 1, 2010, and ending May 31, 2016.[2] The lease included the following rent schedule:

| Months | Monthly Basic Rent | Annual Basic Rent |
|---|---|---|
| 10/01/10–05/31/11 | $ 5,085.19 | N/A |
| 06/01/11–05/31/12 | $ 9,345.75 | $112,149.00 |
| 06/01/12–05/31/13 | $ 9,620.63 | $115,447.50 |
| 06/01/13–05/31/14 | $ 9,895.50 | $118,746.00 |
| 06/01/14–05/31/15 | $10,170.38 | $122,044.50 |
| 06/01/15–05/31/16 | $10,445.25 | $125,343.00 |

In addition to these fees, Camargo agreed to pay its proportionate share of electrical costs, (estimated at $893.18 per month for 2010), operating costs, and taxes.

CRT alleged that Camargo failed to pay its June 2012 rent and then abandoned the property without notice. The lease provided that failure to pay rent within five days after delivery of written notice from CRT constituted default. Upon default, Section 18(b) of the lease gave CRT the right to:

> Terminate Tenant's right to possess the Premises without terminating this Lease by giving written notice thereof to Tenant, in which event Tenant shall pay to Landlord (1) all Rent and other amounts accrued hereunder to the date of termination of possession, (2) all amounts due from time to time under Section 19.(a), and (3) all Rent and other net sums required hereunder to be paid by Tenant during the remainder of the Term, diminished by any net sums thereafter received by Landlord through reletting the Premises . . . . If Landlord elects to proceed under this Section 18.(b), it may at any time elect to terminate this Lease under Section 18(a).

---

[2] In this opinion, the term "lease" refers both to the original lease agreement, which was executed in 2000, and the second amendment to the lease, which renewed the original lease.

Section 18(a) gave CRT the additional right to:

Terminate this Lease by giving Tenant written notice thereof, in which event Tenant shall pay to Landlord the sum of (1) all Rent accrued hereunder through the date of termination, (2) all amounts due under Section 19.(a), and (3) an amount equal to (A) the total Rent that Tenant would have been required to pay for the remainder of the Term discounted to present value at a per annum rate equal to the "Prime Rate" as published on the date this Lease is terminated by The Wall Street Journal, Southwest Edition, in its listing of "Money Rates" minus one percent, minus (B) the then present fair rental value of the Premises for such period, similarly discounted.

An August 10, 2012, letter from CRT's counsel informed Camargo of CRT's intent to terminate the lease, accelerate rent, and demand payment. The letter stated,

Under cover of letter of July 3, 2012, my client requested that the Tenant pay all past due amounts owing under the Lease Agreement, equaling the sum of $10,603.11, by July 12, 2012. To date, my client has not received this payment. The Tenant has now also missed rent payment of $10,587.33 due on August 1, 2012. Under Section 5 of the Lease, Tenant is responsible for late fees and charges for these past due amounts. As of the date [o]f this letter, Tenant owes my client the total sum of $22,368.21 for past due rents, late fees, and handling charges.

Furthermore, due to the Tenant's uncured payment defaults and abandonment of the Premises, the Landlord hereby gives written notice, pursuant to Section 18(b) of the Lease Agreement, of termination of the Tenant's right of possession of the Premises. Under Section 18(b), the Tenant is obligated to pay (1) all outstanding past due amounts, plus late fees and charges as set out in Section 5 of the Lease; (2) all rents and other sums due for the remainder of the Term of the Lease; and (3) all costs and fees incurred under Section 19 of the Lease. The total amount of (l) above, is $22,368.21. The total amount of (2), above, is $492,239.52. My client estimates that the total cost of (3), above, is $1092.99. **In sum, Tenant owes my client $515,700.72 for its breaches of the Lease Agreement and the consequent damages, fees, and charges associated with those breaches.** In addition, under Section 5 of the Lease, late fees and charges will continue to accrue so long as Tenant refuses to satisfy its obligations.

Demand is now made for immediate payment of this amount.

Camargo was sued by CST after failure to submit payment. CST moved for summary judgment on its claim and attached the lease provisions and its counsel's August 10, 2012, letter as its summary judgment proof. In addition, CST submitted the affidavit of Lisa Donovan, the "Senior Director for Property Management for CASE Commercial Partner, which managed the building for CRT Signature Place, LP." In relevant part, the affidavit stated,

> 3. As Senior Director, I oversee the commercial lease . . . between CRT . . . and Camargo . . . . including, but not limited to, Camargo's failure to pay rent.
>
> . . . .
>
> 7. On July 1, 2012, Camargo's Basic Rent and Additional Rent were due under the Lease. The total amount due was $10,603.11.
> 8. Camargo did not make this payment.
> 9. On July 3, 2012, I sent a letter to Camargo demanding payment of the July 3, 2012 rent by July 12, 2012.
> 10. Camargo did not make the July 2012 payment. Camargo has not made any other payments under the Lease.
> 11. On 6/29/2012, I observed Camargo moving furniture from the Premises and Building. In a previous conversation that took place early the same week Camargo indicated they were consolidating their operation all into Suite 845. This was false. Camargo actually vacated the Premises, without notice and in violation of Section 17(b) of the Lease.
> 12. Under Section 18(b) of the Lease, Plaintiff, by and through its counsel, sent notice of termination of the Lease and acceleration of rents due, and made demand for the full amount of rents owed, as well as costs and fees owed and payable under Section 19 of the Lease.
> 13. Plaintiff has made reasonable efforts to re-lease the Premises, but has been unsuccessful to date.
> 14. As a result of Camargo's breach of the Lease, Plaintiff has suffered $515,059.68 in damages. This amount represents: (1) all outstanding past due amounts, plus late fees and charges set forth in Section 5 of the Lease Agreement; (2) all rents and other sums due for the remainder of the Term of the Lease; and (3) all costs and fees incurred under Section 19 of the Lease.

Camargo never contested its liability under the lease or its obligation to pay accelerated rent. Instead, it filed an objection to Donovan's affidavit contending that it "completely fails to

6

describe the amounts that comprise her $515,059.68 damages calculation." "Conclusions in an affidavit are insufficient either to support summary judgment or to raise a fact issue in response to a summary-judgment motion." *Neel v. Tenet HealthSystem Hosps. Dallas, Inc.*, 378 S.W.3d 597, 607 (Tex. App.—Dallas 2012, pet. denied) (citing *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *James L. Gang & Assocs. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 442 (Tex. App.—Dallas 2006, no pet.)). "A conclusory statement is one that does not provide the underlying facts in support of the conclusion." *Id.* at 607–08 (citing *Schindler v. Baumann*, 272 S.W.3d 793, 796 (Tex. App.—Dallas 2008, no pet.); *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 27 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

"Texas Rule of Civil Procedure 166a(c) provides that a summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Stucky v. Noble*, 963 S.W.2d 776, 780 (Tex. App.—San Antonio 1998, pet. denied). Donovan's affidavit specified the amount of rent past due, referenced the monthly rent payment schedule and other sums in the lease, and provided that the total damages were calculated using the lease provisions, which included the applicable rate of interest. Thus, the affidavit provided a basis from which the damages could be calculated and constituted sufficient summary judgment proof. *See Energico Prod., Inc. v. Frost Nat'l Bank*, No. 02-11-00148-CV, 2012 WL 254093, at *5 (Tex. App.—Fort Worth Jan. 26, 2012, pet. denied) (mem. op.); *Sonterra Capital Partners, Ltd. v. Sonterra Prop. Owners Ass'n Inc.*, 216 S.W.3d 417, 423 (Tex. App.—San Antonio 2006, pet. denied); *Martin v. First Republic Bank, Fort Worth, N.S.*,

7

799 S.W.2d 482, 485 (Tex. App.—Fort Worth 1990, writ denied) (holding affidavit setting forth total balance due on note sufficient to sustain award of summary judgment) (citing *Morgan v. Amarillo Nat'l Bank*, 699 S.W.2d 930 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.)).

Camargo's objection to Donovan's affidavit confirmed and conceded that the total future rent due under the lease amounted to $471,959.06. Its complaint was essentially that the trial court erred in awarding damages because no math worksheet was provided showing the step-by-step calculation of how the figure of $515,059.68 was derived. Referring to Section 18(a) of the lease, which provided the method of calculating damages, Camargo argued,

> Thus, even before the $471,959.06 is discounted to present value, and further reduced by the present fair rental value for that same period – in accordance with Section 18(a) of the Lease – the amount in question is significantly less than the $515,059.68 that Plaintiff claims as damages in this case.

Camargo's argument failed to take into consideration its obligation to pay its "Proportionate Share of the cost of all electricity used by the Complex," taxes, and operating expenses under the lease. These additional expenses amounted to $966.70 for the month of August, which was calculated by subtracting the amount due by Camargo in August 2012 from the base rent. Also, Section 5 of the lease agreement provided,

> All past due payments required of Tenant hereunder shall bear interest from the date due until paid at the lesser of eighteen percent per annum or the maximum lawful rate of interest. . .; additionally, Landlord may charge Tenant a fee equal to five percent of the delinquent payment to reimburse Landlord for its costs and inconvenience incurred as a consequence of Tenant's delinquency.

Camargo had notice of CST's acceleration of the rent payment on August 10, 2012. As of the date of summary judgment, March 18, 2013, the $471,959.06 that Camargo concedes was owed was past due by seven months. The interest on this sum alone, which was allowed by

8

Section 5 of the lease, and the estimated additional expenses far exceeded the trial court's award of actual damages.

If the plaintiff satisfies its burden, the burden shifts to the defendant to preclude summary judgment by presenting evidence that raises a genuine issue of material fact. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex. 1982); *Affordable Motor Co. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied). Camargo's objection to Donovan's affidavit did not constitute controverting summary judgment evidence. *Stovall*, 409 S.W.3d at 802; *Zeifman v. Nowlin*, 322 S.W.3d 804, 808 (Tex. App.—Austin 2010, no pet.) ("It is well-settled that . . . pleadings are not competent summary judgment evidence."). "[T]he showing of a lack of information shows no more than [that] there is an *absence* of summary judgment proof to raise a fact issue to defeat the summary judgment motion . . . ." *Martin*, 799 S.W.2d at 485 (quoting *Morgan v. Amarillo Nat'l Bank*, 699 S.W.2d 930, 938 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.).

After reviewing the summary judgment record, we conclude that CST met its summary judgment burden showing it was entitled to summary judgment as a matter of law on its claim for unpaid rent and damages under the lease and that no genuine issues of material fact exist as to the elements of CST's breach of contract claim. We overrule Camargo's sole issue.

We affirm the trial court's judgment.

                                        Jack Carter
                                        Justice

Date Submitted:        November 18, 2013
Date Decided:          December 11, 2013