**William J. O'DAY et ux., Appellants,**

v.

**SAKOWITZ BROTHERS et al., Appellees.**

**No. 15595.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 29, 1970.

Rehearing Denied Jan. 7, 1971.

Powell, Tucker, Kain & Reedy, Paul A. Tucker, Houston, for appellants.

Baker, Botts, Shepherd & Coates, Walter E. Workman, Houston, for appellee Elevator Maintenance Co., Inc.

John L. McConn, Jr., Howard L. Nations, Butler, Binion, Rice, Cook & Knapp, Houston, of counsel, for appellee Sakowitz Brothers.

PEDEN, Justice.

Appeal from a take nothing judgment in a personal injury suit.

Plaintiff Mrs. Lorraine O'Day alleged that she was injured while riding an escalator in Sakowitz Brothers' store at about 1 P.M. on October 23, 1963, when the escalator suddenly stopped. She brought this suit against Sakowitz and against Elevator Maintenance Co., which had contracted to maintain the escalators for Sakowitz. Other parties named as defendants will be noticed later in this opinion.

The appellants' petition stated that while Mrs. O'Day was riding down from the third floor on the escalator it plunged down, jerking her around, and that it came to a jolting stop, further jerking and twisting her, causing her to be dazed and injured. They alleged that the escalator was in the exclusive custody and control of the defendants and that Mrs. O'Day was entitled to rely upon the doctrine of res ipsa loquitur. Further, that she was a business invitee in the store and Sakowitz owed her a nondelegable duty to properly inspect and maintain its escalator, which the defendants negligently failed to do.

She also contended that the defendants failed to comply with City of Houston Ordinances 5602, 5604(c) and (d), 5605 and 5605(e), which concern maintenance, inspection and other duties of the owners of escalators (and elevators, etc.) and with Section 901.3b of the American Standard Safety Code.

Sakowitz answered by general denial, pleaded contributory negligence and unavoidable accident and sought indemnity or contribution from Elevator Maintenance based on a maintenance contract. Elevator Maintenance filed a cross-action seeking like relief from Sakowitz. Each of these defendants alleged that the other's negligence proximately caused the accident.

It is uncontroverted that the lights in Sakowitz Brothers' store went off for a moment and that their escalators stopped at about 1 P.M. on the day in question when there was a brief interruption in the power supplied by the utility company. The expert witnesses testified that the escalators would be stopped by such a power interruption and would have to be started up again. Also that the escalators move at about ninety feet per minute, which is about one mile per hour or one and one-half feet per second and that when the electric power is interrupted the brakes are automatically applied. One expert witness testified that this causes the escalator to come to a "gradual" stop, in from twelve to sixteen inches. Another expert testified that the escalators come to a stop within

sixteen to eighteen inches, and a third said that the escalator in question, when going down with one or two people on it, would move six to eight inches after the brakes were applied and would come to a "soft" stop.

The expert witnesses testified that they had never heard of an escalator going into a "free fall" and the exhibits offered by the defendants demonstrated the various forces making it unlikely to happen. The plaintiffs apparently submitted no issues seeking a finding that it did occur.

In response to special issues the jury found 1) that the escalator on which Mrs. O'Day was a passenger came to a sudden stop, but the jury did not find 2) that Elevator Maintenance or its agents, servants and employees failed to use ordinary care in the maintenance of the escalator on or before the incident in question and did not find 4) that Sakowitz or its agents, servants and employees failed to use a high degree of care in its maintenance before the incident in question. The jury found 6) that the occurrence was the result of an unavoidable accident, 7) that Mrs. O'Day did sustain injury on the occasion made the basis of the suit, and 8) that the reasonable value of the medical services made necessary by such injury was $2,300., but 9) the jury did not find that she had suffered other damages.

The appellants present their first four points of error together, alleging in those points that the trial court erred in refusing to grant their amended motion for new trial in that 1) Sakowitz and Elevator Maintenance were each allowed six jury strikes when there was no controversy to be decided by the jury between those defendants, 2) the trial court should have permitted two prospective jurors to be struck for cause, 3) a Mrs. Hayes, one of the jurors, failed to answer a question on voir dire as to whether she had ever received an injury when in fact she had suffered a back injury and 4) there was no evidence to sup-port the jury's answer of "none" to Special Issue No. 9, the general damage issue.

We overrule the first four points.

■ We hold that the trial judge did not err in allowing Sakowitz and Elevator Maintenance six peremptory challenges each.

■ Whether two or more parties are each entitled to six jury strikes under Rule 233, Texas Rules of Civil Procedure, depends on whether they have interests that are, at least in part, antagonistic on one or more fact issues. Retail Credit v. Hyman, 316 S.W.2d 769 (Tex.Civ.App.1958, writ ref.).

■ We have noted that Sakowitz and Elevator Maintenance had filed pleadings seeking indemnity and contribution from each other. The appellants contend that there was no antagonism between such defendants on any fact issue because Mr. P. B. Smith, an officer and owner of Elevator Maintenance, judicially admitted in a deposition on file in this cause that the maintenance contract between the defendants was in effect at the time of Mrs. O'Day's accident and it obligated Elevator Maintenance to maintain the escalator in question for Sakowitz. There are several reasons for our not agreeing with this position. The record does not reflect that such deposition, or the admission therein (if it did constitute a judicial admission) was ever called to the attention of the trial judge. We think it would place an unreasonable burden upon him to require him to examine all depositions on file in determining how many peremptory challenges to allow. Further, Mr. Smith's statement would not demonstrate that these defendants have no antagonistic interests on fact issues.

It appeared from the pleadings on file when the trial judge was required to rule on this matter, that fact issues would likely arise as to whether the escalator sped up

and then stopped suddenly, and if so, what caused this to happen. Even if the maintenance contract between the defendants had been before the court, it provides that Elevator Maintenance assumed no liability for injuries or damages to persons except those directly due to the acts or omissions of Elevator Maintenance. Under the defendants' respective pleadings each could have offered proof to show that the accident was caused by negligence on the part of an employee of the other, so the defendants' liability was not necessarily a question of law to be determined by the court from the contract.

■ We have examined the record of the voir dire examination of the two prospective jurors whom the trial court declined to strike for cause, and we hold that the error, if any, was harmless. The challenged jurors did not serve, and the record does not reflect that before they exercised their peremptory strikes, the appellants made known to the trial judge that two of the jurors who served were objectionable to them. It appears that the appellants were restricted in their efforts to state their position in open court during selection of the jury, but they were allowed to timely present their written objections to the two prospective jurors, and we find no reference in such writing to their being required to accept two other jurors who were objectionable to them.

■ In order to complain, the appellants would be required to show that before they exercised their peremptory challenges they apprized the trial court that two of the prospective jurors were objectionable to them and that they would have challenged those jurors had they not been forced to exhaust two challenges on objectionable jurors. Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764 (Tex.Sup.1965); Hammon v. Texas & New Orleans Railroad Co., 382 S.W.2d 155 (Tex.Civ.App. 1964, writ ref. n. r. e.).

■ Further, when the trial court has found that a prospective juror was not disqualified, the appellate courts must consider the evidence in the light most favorable to upholding that ruling. Compton v. Henrie, 364 S.W.2d 179 (Tex.Sup.1963); Swap Shop v. Fortune, 365 S.W.2d 151 (Tex.Sup.1965). When the evidence as to disqualification is viewed in that light, we cannot say that the trial court erred in denying the appellants' motion to strike the two prospective jurors.

■ As to the appellants' contention that Mrs. Hayes failed to answer their question on voir dire examination of the jury panel as to whether anyone had ever had an injury, we note that Mrs. Hayes' explanation, given during the hearing on the appellants' motion for new trial, was 1) she was never asked if she had had an injury and 2) she once fell in her home, but her doctor said there was no injury, so she could truthfully say she had not injured her back.

Our examination of the record of the questioning of the prospective jurors does not reveal that Mrs. Hayes was asked any direct questions concerning her health or any possible injuries. Several questions were asked of the panel generally, and of other veniremen individually, concerning lawsuits or claims they might have filed based on past injuries, and two of the questions then asked were:

"All right, getting back to this: Is there anybody else who has ever sustained any injury or made a claim for money damages?"

"Anybody else ever had a claim or been hurt or received any money as a result of being hurt? And I take it by your silence there are none?"

We hold that the trial judge did not err in absolving Mrs. Hayes of jury misconduct. It appears that she did not understand counsel to be asking if she had ever been hurt irrespective of the filing of any

claim, and the trial judge was entitled to accept her testimony that in her own mind she had not had an injury. This being true, no misconduct was shown. P. T. Whitlock Gas & Oil, Inc. v. Brooks, 396 S.W.2d 922 (Tex.Civ.App.1965, no writ).

■ Nor can we say that the appellants discharged their burden not only to ask direct questions but to see that each juror hears them. McCarthy Oil & Gas Corp. v. Cunningham, 255 S.W.2d 368 (Tex.Civ. App.1953, writ ref. n. r. e.); Thompson v. Quarles, 297 S.W.2d 321 (Tex.Civ.App. 1956, writ ref. n. r. e.).

■ Appellants' fourth point, that the jury's answer of "none" to the general damage issue showed prejudice because there was no evidence to support it, is also overruled.

Although there was evidence from Mrs. O'Day and from her medical expert to support a finding that she had suffered pain, lost time from her work and had diminished ability to do housework, and although the jury found that she was injured on the occasion in question, the jury's negative answer to the general damage issue does not require reversal of the case. The appellants did not secure findings from the jury that any defendant was negligent; there is in the record substantial evidence supporting the jury's answers to the negligence issues and no evidence that prejudice or improper influence entered into or caused them. The jury's answer to the general damage issue became immaterial when the jury found neither defendant negligent. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939).

■ The appellants' fifth point of error states that there was no evidence to support the submission of the unavoidable accident issue and none to sustain the jury's answer to it. We overrule the point. Under the definition given in this case the plaintiffs had the burden of convincing the jury that the sudden stop of the es-

calator was proximately caused by some negligent act of the plaintiffs or of any defendant. This they failed to do.

■ It was persuasively shown that the power failure caused the escalator to stop, and the jury found that the stop was a sudden one. "Sudden" was not defined in the court's charge. Under the evidence the jury was entitled to believe that on the occasion in question the escalator stopped within its usual stopping distance, which, the testimony showed, could have been as little as six inches or as much as eighteen inches. Further, that although such stop was a sudden one, it was the way the escalator was designed to stop and was not the result of negligence on the part of Sakowitz or Elevator Maintenance. The jury was entitled to remain unconvinced that the manufacturer of the escalator, Otis Elevator Co. (a defendant whose motion for instructed verdict had been granted when the plaintiff rested) was negligent in designing the escalator so that it could be stopped within six to eighteen inches. If the lights go out or if someone gets caught by moving parts of the escalator it would seem to be important that it could be stopped in a short time. The jury found that Mrs. O'Day sustained an injury; there was some evidence that she had had a previous back problem.

A witness testified that the stop on the occasion in question was like one which was demonstrated to the jury by means of a motion picture, which showed that a "normal" stop would not cause water to be spilled from a glass placed on one of the steps of the escalator. Even though the jury was entitled to characterize it as "sudden", the jury was not compelled to conclude that the stop was so abrupt as to constitute negligence, and made no finding that it was or was not. We conclude that this evidence of the power failure plus the lack of negligence on the part of the parties supports the submission of the unavoidable accident as defined here and the jury's decision that it did not find any party's negligence proximately caused the accident.

Appellants' sixth point complains of the trial court's refusal to submit their Requested Special Issues A and B. They were:

### Requested SPECIAL ISSUE NO. A

"Do you find from a preponderance of the evidence that Sakowitz Brothers through its contractor, Elevator Maintenance Company or its agents, servants and employees, failed to use a high degree of care in the maintenance of the escalator on the occasion in question?

"Answer 'We do' or 'We do not'.

"INSTRUCTION: By the term 'high degree of care' as used in this charge is meant that degree of care that would be exercised by a very prudent and cautious person under the same or similar circumstances.

"If you have answered Special Issue No. —— 'We do', and only in that event, then answer:

### Special SPECIAL ISSUE NO. B

"Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the occurrence made the basis of this suit.

"Answer 'We do' or 'We do not'.

"INSTRUCTION: The term 'proximate cause' as that term is used means that cause which in its natural and continuous sequence produces a result that would not have occurred but for such cause, and which result or some like result ought reasonably to have been anticipated or foreseen by a very competent, cautious and prudent person in the light of the attending circumstances. There may be more than one proximate cause of an event."

The trial court submitted to the jury the following:

### SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that Sakowitz Brothers or its agents, servants and employees failed to use a high degree of care in the maintenance of the escalator on or before the accident made the basis of this suit?

"Answer 'We do' or 'We do not'.

"By the term 'high degree of care' as used in this charge is meant that degree of care that would be exercised by a very cautious prudent person under the same or similar circumstances.

"To which the Jury answered 'We do not'.

"If you have answered Special Issue No. 4 'We do', and only in that event, then answer:

### SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the occurrence made the basis of this suit?

"Answer 'We do' or 'We do not'.

"The term 'proximate cause' as that term is used in this issue means that cause which in its natural and continuous sequence, unbroken by any new and independent cause, produces a result that would not have occurred but for such cause, and which result or some like result ought reasonably to have been anticipated or foreseen by a very competent, cautious and prudent person in the light of the attending circumstances. There may be more than one proximate cause for an event.

"To which the Jury made no answer."

As noted, the trial court also submitted to the jury in Special Issue No. 2 an inquiry as to whether Elevator Maintenance or its agents, servants and employees failed to use ordinary care in the maintenance of

the escalator, together with a proximate cause issue, No. 3.

The appellants relate that this point of error is germane to paragraph 21 of their amended motion for new trial. It stated:

"The Trial Judge erred in refusing to include requested issues in the Court's charge to the jury as requested by the Plaintiffs which comprised an independent theory of recovery against Elevator Maintenance based on the nondelegable duty of Sakowitz Brothers."

In the appellants' brief they do not complain, however, that the trial court's refusal of the issues denied them the submission of an independent theory of recovery against Elevator Maintenance; in it they argue that in the refused issues they sought to hold Sakowitz to a high degree of care and in view of the testimony that maintenance of the escalator had been contracted out to Elevator Maintenance as the agent of Sakowitz, appellants were entitled to hold Elevator Maintenance to a high degree of care, and the refused issue would have made Sakowitz responsible for failure on the part of Elevator Maintenance.

We consider that the assignment in the motion for new trial failed to comply with the requirements of Rules 321, 322 and 374, Texas Rules of Civil Procedure.

"Rule 321 requires that the assignments in the motion refer to the action of the court complained of 'in such way as that the point of objection can be clearly identified and understood by the court.' Rule 322 directs that 'Grounds of objections couched in general terms * * * shall not be considered by the court.' Rule 374 provides that 'A ground of error was not distinctly set forth in the motion for new trial, in cases where a motion for new trial is required shall be considered as waived.' While Rule 1 states that the rules are to be given a liberal construction to the end that a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law may be obtained with expedition and dispatch and without unnecessary expense, Rules 320, 321, 322 and 374 were deliberately adopted to serve a useful purpose. There must be a substantial compliance with the provisions of those rules if a litigant is to have his points of error based thereon considered by an appellate court." Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960).

The language in the motion cannot be said to be such that the objection now sought to be raised could be "clearly identified and understood by the court." Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407 (1943); Aetna Casualty & Surety Co. v. Depoister, 393 S.W.2d 822 (Tex.Civ.App.1965, writ ref. n. r. e.); Wood v. State, 434 S.W. 2d 149 (Tex.Civ.App.1968, no writ); Donald v. First State Bank of Chico, 448 S.W. 2d 196 (Tex.Civ.App.1969, no writ).

The appellants' seventh point of error is based on their contention that under the undisputed evidence in this case they were entitled, as a matter of law, to findings of negligence and proximate cause against both Sakowitz and Elevator Maintenance, and their eighth point asserts that Special Issues No. 2 and No. 4 are not supported by any evidence of probative value. Issues No. 2 and No. 4 inquired as to primary negligence on the part of Elevator Maintenance and Sakowitz respectively.

We also overrule these points. The defendants' evidence that the escalator was caused to stop by the interruption in the power supplied by the utility company plus the evidence that their maintenance and inspections had kept it functioning in its normal manner were sufficient to raise fact issues.

The doctrine of res ipsa loquitur, upon which appellants here rely, is merely a rule of evidence and if all of the elements necessary to invoke the doctrine are pres-

ent, an inference may arise against the defendant. But if the defendant comes forward and explains the cause of the occurrence, or offers some evidence to exonerate itself from negligence, the inference or presumption vanishes and plaintiff then is put to the task of alleging and proving actionable negligence against the defendant. Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659 (1935); Robertson v. Southwestern Bell Telephone Co., 403 S.W.2d 459 (Tex.Civ.App.1966, no writ); Sims v. Dallas Ry. & Terminal Co., 135 S. W.2d 142 (Tex.Civ.App.1939, no writ).

■ Appellants' ninth point of error complains of the trial court's refusal to admit in evidence Section 5606 of the Ordinances of the City of Houston. Such ordinance provides, among other things, for the reporting to the City of Houston of incidents such as the one in question and for making the premises available for inspection by City inspectors. The exclusion of this ordinance requiring a report to be filed and an inspection to be made after the accident was not error. A violation of the ordinance could not have been a proximate cause of the accident and was not material to any jury issue.

■ Lastly, the appellants say that it was error to exclude their exhibit number 29, this letter dated November 6, 1962 from Elevator Maintenance to Sakowitz:

"We submit the following quotations and information which you have extended the privilege of presenting on the elevators and escalators in your three stores.

"We will dismantle, clean, reassemble and adjust your escalators and thoroughly clean & adjust your elevators, elevator machine room equipment (including the draining and cleaning of all machines), hoistways & hoistway equipment for the sum of Eight Thousand Dollars ($8,000.00). This sum may be divided into twelve monthly payments and paid out over a period of one year, along with your Service payments, if you prefer.

"It is our recommendation that your equipment be maintained on a Service arrangement whereby we would use the elevator and escalator parts in your present inventory. Additional parts, as needed, could either be bought and stored by your buildings or by our Company. If you should stock your own parts—we would be responsible for submitting parts recommendations currently.

"A Service agreement such as we are recommending along with the over-all cleaning & adjusting, and repair recommendations we will submit when the equipment is undergoing a general program of improvement will eliminate the depreciation of the past years. Repair recommendations and cost quotations will be submitted for your approval as an additional charge to this agreement.

"Methods, Competent Personnel and Materials are the three components of your service agreement. The proper application of these components in a planned maintenance service will guarantee maximum efficiency. It is our responsibility to maintain your equipment to such a degree that years of use will never affect the performance of your equipment. We submit our service agreement, including your three stores, for the sum of $886.00 per month.

"We appreciate your consideration of our Service plan. The personal interest we will have in adapting our work to your needs can afford you a very satisfactory agreement."

The contract which resulted from this proposal was signed six days later. It was admitted in evidence, and a witness testified about his inspection of the escalators in 1962. His testimony was specific; the letter was in general terms. The appellants argue that the maintenance that should

have taken place at that time in accordance with the letter "would certainly within one year affect the safe operation of the escalator." We find nothing in the record by way of predicate to show the materiality of the exhibit. We cannot say that the trial court erred in excluding it. If it was error, we consider that it was harmless.

The parties stipulated that defendants Sakowitz Brothers and Sakton Realty Company would be considered the same entity for purposes of this suit and that Elevator Maintenance Company would be considered the same as Elevator Maintenance, Inc. for this suit.

The judgment of the trial court is affirmed.

COLEMAN, J., not participating.