**BAKER MARINE
CORPORATION, Appellant,**

v.

**WEATHERBY ENGINEERING
COMPANY, Appellee.**

No. 13–85–329–CV.

Court of Appeals of Texas,
Corpus Christi.

April 17, 1986.

Rehearing Denied May 29, 1986.

Barry Abrams, Claude R. Treece, Sewell & Riggs, Houston, for appellant.

V. Camp, Cuthrell, III, Corpus Christi, for appellee.

Before UTTER, SEERDEN and BENA-VIDES, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a jury verdict in a contract case wherein the jury awarded Weatherby Engineering Company (Weatherby) damages against Baker Marine Corporation (Baker) for the value of the work performed by Weatherby as of the date of termination of the contract by Baker. The trial court entered judgment in the amount of $460,998.00, after deducting certain amounts agreed to by the parties, plus attorney's fees, prejudgment and post-judgment interest, and costs. We reform the judgment of the trial court and reverse and remand in part and affirm in part.

Dresser Industries (Dresser) awarded a contract to Baker for the construction of four gas compression modules. Weatherby was hired by Baker, as a subcontractor, to build two of the modules. The project was plagued with problems from the beginning which caused production to continually lag behind schedule. On February 1, 1983, Baker sent a letter to Weatherby, invoking the default provision of the contract and advising Weatherby that they had five days within which to "take positive steps to remedy this problem or [Baker] will be forced to take positive steps to complete the project by other means." Weatherby was terminated on May 1, 1983.

By its first point of error, Baker contends that the trial court erred in overruling its motion for new trial based on jury misconduct. Baker asserts that the alleged jury misconduct stems from a prospective juror's failure to disclose that her husband had previously worked for Baker and had filed a claim for unemployment compensation which Baker successfully protested. Weatherby's counsel, during general voir dire, asked the members of the jury panel to raise their hands if anyone knew any of the parties. No one responded. Baker's counsel then asked the following questions:

Are there any of you who remember this case or this dispute back in the time when it happened? Have you read anything about it in the newspaper or talked to any friends that know anything about it? Did any of you, or any members of your family, ever work for Weatherby Engineering or Protexas (phonetically)? *Have any of you, or any members of your family, ever worked for Baker Marine?* [emphasis ours]

Baker contends that prospective juror Odom's failure to respond to the last question, and thereby disclose the fact that her husband had worked for Baker and had

been denied unemployment compensation, constitutes jury misconduct requiring a new trial. A new trial based on jury misconduct will be granted upon proof that: (1) misconduct occurred; (2) it was material misconduct; and, (3) based on the record as a whole, the misconduct probably resulted in harm to the movant. *Kansas City Southern Railway Co. v. Chaffin*, 658 S.W.2d 186 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.), *cert. denied*, —— U.S. ——, 105 S.Ct. 177, 83 L.Ed.2d 112 (1984). In the case before us, the trial court overruled Baker's motion for new trial, impliedly finding that no jury misconduct occurred. This action will not be disturbed on appeal unless a clear abuse of discretion is shown. *Id.* at 189.

At the hearing on the motion for new trial, Mrs. Odom testified as follows:

Q. And, Mrs. Odom, do you recall during the voir dire of that case, the question being asked of the jury, 'Have you or any members of your family ever worked for Baker Marine?'

A. I thought you said 'working.'

Q. All right. And you did not respond to that question, did you?

A. No.

Q. And your husband had, in fact, worked for Baker Marine?

A. Yes, in '82.

 \* \* \* \* \* \*

Q. And did your husband have any dispute with Baker Marine while he was employed there that would affect your opinion about Baker Marine?

A. No. We have a shrimp boat and he quit to go shrimping.

Q. Do you know whether or not your husband had any controversy or complaint against Baker Marine?

A. No.

■ It is counsel's responsibility to make sure that all members of the jury panel hear and understand the question asked. *See Missouri Pacific Railroad Co. v. Cunningham*, 515 S.W.2d 678 (Tex.Civ.App.—

San Antonio 1974, writ dism'd); *O'Day v. Sakowitz Brothers*, 462 S.W.2d 119 (Tex. Civ.App.—Houston [1st Dist] 1970, writ ref'd n.r.e.). Baker offered no evidence to refute Mrs. Odom's assertions that she misunderstood the question and that she was unaware of her husband's claim for unemployment benefits. As the trier of fact, the trial court was entitled to believe her testimony. *See, e.g., Missouri Pacific Railroad Co. v. Cunningham*, 515 S.W.2d at 683; *O'Day v. Sakowitz Brothers*, 462 S.W.2d at 123. The trial court did not abuse its discretion by finding that no jury misconduct occurred. Even if Mrs. Odom's failure to answer the question was misconduct, Baker has not shown that such misconduct was material or that it resulted in probable harm. "To show probable harm, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he 'would otherwise have done on one or more issues vital to the judgment.'" *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985). There is nothing in the record to indicate that Baker struck any of the jurors from the jury panel who responded to the question, or that it would have struck Mrs. Odom had she responded. Baker points to the fact that the verdict was 10–2, with Mrs. Odom voting with the majority. At the hearing on the motion for new trial, Baker offered the testimony of Mrs. Kollar, one of the two jurors that did not sign the verdict. Mrs. Kollar testified that Mrs. Odom did not inject any outside evidence or personal experiences into their deliberations; that she seemed to be prejudiced against Baker throughout the deliberations; and, that Mrs. Odom seemed to have already made up her mind about the case before they began discussing it.

■ The evidence which can be heard by the trial court as grounds for a new trial based on jury misconduct is governed by TEX.R.CIV.P. 327:

b. A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to

the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, except that a juror may testify whether any *outside influence* was improperly brought to bear upon any juror. [emphasis ours]

TEX.R.CIV.P. 327(b); TEX.R.EVID. 606(b).

As can be seen, Mrs. Kollar's testimony expressly negated any contention that Mrs. Odom injected any "outside influence" into the jury deliberations. Any other testimony given was inadmissible on the issue of jury misconduct. TEX.R.CIV.P. 327(b); TEX.R.EVID. 606(b); *see also Texas General Indemnity Co. v. Watson*, 656 S.W.2d 612 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *c.f. General Accident Fire and Life Assurance Corp. v. Coffman*, 326 S.W.2d 287 (Tex.Civ.App.—Waco 1959, writ ref'd n.r.e.) (juror intentionally failed to disclose a previous back injury during jury voir dire; juror's testimony allowed to show "extraneous influence of his own injury.") Baker's first point of error is overruled.

Points of error two, three, four, and six challenge the sufficiency of the evidence. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

■ By point of error number two, Baker contends that the evidence is factually insufficient to support the jury's finding that Baker waived its right to cancel the contract. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Burton v. National Bank of Commerce*, 679 S.W.2d 115 (Tex.App.—Dallas 1984, no

writ). Evidence of waiver can be divided into three general categories: (1) an express renunciation of the known right; (2) silence or inaction, coupled with knowledge of the right, for such an unreasonable period of time as to indicate an intention to waive the right; or, (3) conduct of the party knowingly possessing the right of such a nature as to mislead the other party into an honest belief that the waiver was intended or assented to. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210 (Tex.Civ.App.— Amarillo 1981, writ ref'd n.r.e.); *see also PGP Gas Products, Inc. v. Reserve Equipment, Inc.*, 667 S.W.2d 604 (Tex.App.— Austin 1984, writ ref'd n.r.e.).

■ On February 1, 1983, Baker sent its letter notifying Weatherby that they were in default and had five days within which to "take positive steps to remedy [the] problem." The testimony of Mr. Kilpatrick, Baker's project manager, confirms that Baker knew of its right to terminate Weatherby under the default provisions of the contract. On February 2, 1983, Weatherby sent a letter to Baker outlining the steps that it was implementing in order to "remedy [the] problem." Mr. Kilpatrick testified that Weatherby's letter temporarily satisfied them. During the three month time span between the February 1, 1983, notice of default letter and the May 1, 1983, termination letter, Baker and Weatherby continued to work toward completion of the four modules. Baker continued to negotiate and approve change orders with Weatherby. Baker accepted and agreed to the percentage completion reports submitted by Weatherby. Those figures were included in bills sent to Dresser. There was testimony which indicated that Baker received payment from Dresser on these bills. Although Baker did continue to complain to Weatherby about delays, no other written notice of default was given after the February 1, 1983, letter. Baker correctly points out that this contract does not require Baker to terminate Weatherby within a specific number of days. The problem with this argument is that waiver is an equitable remedy, and as such, is not

controlled by the *lack of* a contract provision. The span of three months between notice of default and termination coupled with the continuing efforts to complete the project constitute sufficient evidence of waiver. Baker's second point of error is overruled.

■ By its third and fourth points of error, Baker contends that the evidence is factually insufficient to support the jury's finding that Weatherby was due $494,605.00. The jury was instructed to consider the value of the work performed by Weatherby as of May 1, 1983, and not yet paid for by Baker. Originally the parties had agreed to be paid on a "milestone" basis, but soon changed to "percentage completion." By this method, Weatherby would use procedures commonly accepted in the industry, and agreed upon by Baker, to calculate, on a monthly basis, how much of the project was completed. The estimates would then be submitted to Baker as invoices. During the three month period in question (February, March and April) Weatherby submitted six invoices to Baker based upon percentages of completion that had been approved by Baker. According to Weatherby's invoices, it was owed $494,605.00 (including four subsequent invoices each in the amount of $1908.00 for the rental of equipment). This was the exact amount awarded by the jury.

The contract provides for two ways by which termination could occur. The first, "termination for convenience," provides that Baker could terminate the contract at any time by giving written notice. Weatherby would then be entitled to be paid a sum representing that portion of the contract completed, minus amounts already paid. The second manner of termination, "default," provides that Weatherby would be in default if it failed to "remedy or commence decisive action" within five days of written notice from Baker that Weatherby was not diligently completing the work required to keep on schedule. In that event, Baker would be entitled to deduct from the contract price the expense of completing the work. However, the jury found that Baker waived its right to hold Weatherby in default, and we have upheld that finding. Therefore, Baker terminated the contract under the "termination for convenience" clause, and Weatherby should be paid for "that portion of the contract theretofore performed."

This is the dispute between the parties. Weatherby's invoices, discussed above, represent a percentage of completion of approximately 91%. Baker's expert testified that, after the project was completed by Baker, he computed Weatherby's percentage of completion to be approximately 75% at the time of termination. Baker computed this figure by determining the number of hours that Weatherby expended on the project, adding the number of hours that it actually took Baker to complete Weatherby's portion (to get a total number of hours) and then calculating Weatherby's percent complete (by dividing the number of hours expended by Weatherby by the total number of hours). Weatherby's expert testified that Weatherby could have completed the job in nearly one-third of the time that Baker's expert calculated that Baker actually used to complete the job. This discrepancy accounts for the difference in the percentage of completion calculations offered by each party. In any event, the jury heard this testimony and was at liberty to believe or disbelieve the parties and witnesses as they chose. *Gomez v. Franco*, 677 S.W.2d 231 (Tex.App.—Corpus Christi 1984, no writ). Obviously the jury chose to believe Weatherby. Baker's third and fourth points of error are overruled.

■ By its fifth point of error, Baker contends that the trial court erred in not allowing an offset for certain sums that the jury found were expended by Baker in completing the project. Baker bases its claim for recovery on the "default" section which provides that, should Weatherby default under the contract, then "[t]he expenses of the completion of the work plus any expenses incurred as a result of [Weatherby's] default, if any, shall be deducted from the contract price of the work." However,

the "termination for convenience" section of the contract provides that "[d]eduction shall be made by Baker for the amount previously paid to [Weatherby] and for any amount that may be due [Baker] or may be offset or withheld by *the terms hereof.*" [emphasis ours] Obviously, the words "terms hereof" pertain only to the "termination for convenience" section. Having previously decided that the contract was not terminated under the "default" provisions of the contract, appellant is relegated to those damages set forth under the "termination for convenience" section and recovery of amounts for completion of the project are not included therein. The judgment reflects that the parties agreed that $33,607.00 should be subtracted from the judgment. The trial court was correct in refusing to offset any further amounts. Baker's fifth point of error is overruled.

By its sixth point of error, Baker asserts that the jury's finding that the value of Baker's work on the Weatherby modules after May 1, 1983, was zero, is against the great weight and preponderance of the evidence. Since we have already held, under Baker's fifth point of error, that Baker's damages for cost of completion under the "termination for convenience" section are not recoverable under the contract, we find it unnecessary to address the merits of Baker's sixth point of error. Point of error number six is overruled.

By its seventh point of error, Baker contends that the trial court erred by awarding prejudgment interest on the judgment at a rate in excess of the legal rate. The judgment states that the damage award shall incur interest at the rate of nine percent from May 1, 1983, until September 1, 1983, and ten percent from September 1, 1983, until the date of judgment. Baker argues that the maximum legal rate for prejudgment interest is set at six percent by TEX.REV.CIV.STAT.ANN. art. 5069–1.-03 (Vernon Supp.1986). We agree. Article 5069–1.03 provides:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall

be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

Weatherby asserts that the recent Texas Supreme Court case of *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), gives the trial court discretion to award prejudgment interest at a higher rate as "equitable interest." We read *Cavnar* to hold that the trial court has discretion to award prejudgment interest to a prevailing plaintiff, invoking equitable considerations *where no statute controls the award of prejudgment interest. Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d at 552. (citing *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex.1978)).

We hold that where a statute specifically applies governing the rate applicable to prejudgment interest, the trial court does not have discretion to award a higher rate than that set forth in the statute. See *Miner-Dederick Construction Corp. v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193 (Tex.1980); *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d at 484–85; *Fidelity & Casualty Co. v. Central Bank of Houston*, 672 S.W.2d 641 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). *Texas Farmers Insurance Co. v. Hernandez*, 649 S.W.2d 121 (Tex. App.—Amarillo 1983, writ ref'd n.r.e.). The judgment of the trial court awarding prejudgment interest of 9% and 10% is reformed to reflect that a prejudgment interest rate of six percent (6%) accrue. Baker's seventh point of error is sustained.

By it's eighth and final point of error, Baker contends that the trial court erred in awarding prejudgment interest from May 1, 1983, because any sums owed by Baker had not yet become "due and payable," as required by TEX.REV.CIV.STAT.ANN. art. 5069–1.03. Article 5069–1.03 provides that prejudgment interest shall begin to accrue thirty (30) days "after the time when the sum is due and payable." The contract provides that invoices submitted

by Weatherby and approved by Baker "shall be due and payable in thirty (30) days."

 Baker contends that the sum did not become "due and payable" until the judgment date because Weatherby failed to comply with a clause of the "termination for convenience" section. That clause states that, after notice of termination, Weatherby must submit a "written termination claim" within thirty days of termination. Weatherby did not submit such a claim. Baker argues that since Weatherby failed to submit the required claim, then there was no date upon which the sums were "due and payable" until the judgment date. Regardless of whether there is any merit to this contention, Baker, the breaching party, cannot take advantage of provisions favorable to it contained in the very contract which it was found to have breached. *Sterling Projects, Inc. v. Fields*, 530 S.W.2d at 606. However, we find that neither party, nor the trial court, has properly determined when the sum became due and payable. As stated earlier, the jury obviously based its award of $494,605.00 on ten invoices submitted to Baker by Weatherby. These invoices are: (1) April 1, 1983, $108,028.54; (2) April 1, 1983, $210,649.00; (3) April 4, 1983, $713.64; (4) April 29, 1983, $76,176.99; (5) April 29, 1983, $40,061.81; (6) April 30, 1983, $51,342.00; (7) May 6, 1983, $1908.00; (8) June 1, 1983, $1908.00; (9) July 7, 1983, $1908.00; and, (10) August 1, 1983, $1908.00. According to the contract, each invoice did not become due and payable until thirty days after its submission. Article 5069–1.03 provides for prejudgment interest to begin accruing thirty days after the sum has become due and payable. Consequently, prejudgment interest could not begin to accrue on any invoice until sixty days after the date it was submitted to Baker. Therefore, we order the judgment reformed to reflect that prejudgment interest at the rate of six percent accrue beginning on the date sixty days from the date of each invoice, respectively, until the date of the judgment. Baker's eighth point of error is sustained.

The judgment of the trial court is reformed to reflect that prejudgment interest at the rate of six percent is awarded. Prejudgment interest shall begin to accrue sixty days from the date of each invoice, until the date of the judgment, and this portion of the cause is reversed and remanded to the trial court for a determination of the amount of prejudgment interest accrued in conformity with this opinion. The judgment is otherwise affirmed.