**R. Lloyd MARTIN and Bob Sims, Jr., Appellants,**

v.

**FIRST REPUBLIC BANK, FORT WORTH, N.S. (now known as NCNB Texas National Bank), Appellee.**

**No. 2–89–259–CV.**

Court of Appeals of Texas, Fort Worth.

Oct. 31, 1990.

Rehearing Overruled Dec. 4, 1990.

Thaddeus Freeman, Jones & Associates, Arlington, for appellants.

Jennifer G. Jackson, Sally C. Helppie, Johnson & Gibbs, P.C., Dallas, for appellee.

Before JOE SPURLOCK, II, FARRIS and MEYERS, JJ.

## OPINION

MEYERS, Justice.

This is an appeal by R. Lloyd Martin and Bob Sims, Jr., guarantors of two promissory notes, against whom, as defendants, summary judgment on all claims and counterclaims was rendered below. The Plaintiff bank was awarded the full amount due on the notes and the bank's judgments were severed, leaving only the cross-actions among defendants. Appellants appeal the striking of their counterclaims, the

granting of summary judgment, and the severances arising therefrom.

Judgment affirmed.

On June 7, 1984, Park Lake Joint Venture ("Park Lake"), borrowed $4,360,000 from Interfirst Bank Fort Worth, N.A. The debt was secured by a deed of trust to certain real property owned by Park Lake. Appellant Sims, individually, and appellant Martin's company, along with others, were joint venturers in Park Lake as well as personal guarantors of the note. Subsequently, on June 7, 1985, Park Lake executed a second promissory note to Interfirst in the principal amount of $1,500,000 which was also personally guaranteed by Sims and Martin.

All unpaid principal and interest on both notes was due and payable on June 7, 1986. Park Lake defaulted on the notes. On June 2, 1987, Park Lake was placed into involuntary bankruptcy. On November 7, 1986, prior to Park Lake's bankruptcy proceedings, appellee[1] posted the real property securing Park Lake's indebtedness for foreclosure. The bank met with repeated difficulties as a result of the bankruptcy process and the record does not reflect that foreclosure ever took place.

The terms of both the 1984 and 1985 guaranties by appellants specifically made them primarily liable, jointly and severally on all guaranteed indebtedness. On January 28, 1987, the bank made demand on appellants and other guarantors for the full amount owing under both notes which the defendants have refused to pay.

In June of 1987, Interfirst Bank Fort Worth, N.A. merged with RepublicBank, Fort Worth, N.A. to form First Republic-Bank Fort Worth, N.A. The notes and guarantees were properly transferred and assigned to the new entity.

On July 29, 1988, First RepublicBank was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC") was named as its receiver. On the same day, the FDIC transferred and assigned the notes and guaranties to JRB Bank, National Association which became NCNB Texas National Bank, effective July 29, 1988.

A lawsuit seeking payment from appellants and other guarantors on the notes upon which Park Lake defaulted was filed on May 21, 1987. NCNB, as the current owner of the notes and guaranties, has continued the action.

Appellants filed a verified denial alleging: payment; impairment of collateral; ambiguity; estoppel; and failure to act in good faith. On December 29, 1987, appellee obtained an interlocutory summary judgment against appellants. On February 26, 1988, appellants filed a counterclaim. Appellee's motion to strike the counterclaim was granted March 28, 1989. On July 21, 1989, the interlocutory summary judgment against appellants was made final and the bank's actions against them were severed from the pending cause. It is this severed summary judgment that is before us now.

In their first point of error, appellants argue that the trial court erred in granting summary judgment against them and in finding as a matter of law that no questions of fact existed as to appellee's action.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *MMP Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R. CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence in the light most favorable to the

---

**1.** It is common knowledge that under current economic conditions many banks have changed ownership more than once. Such being the case in this instance, we shall employ the fiction of referring to all of the banks in this chain of ownership as "appellee" since each, being a successor in legal interest to the other, is affected by its predecessor's actions as though those actions were taken by the successor itself.

nonmovant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.,* 480 S.W.2d 176, 178 (Tex. 1972). Every reasonable inference from the evidence must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Montgomery,* 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American,* 391 S.W.2d at 47.

Conversely, if it appears from the trial court record that there can be no genuine issue of material fact affecting the outcome of the lawsuit, summary judgment must be affirmed—even if it were insupportable on the grounds asserted in the motion for summary judgment or in the points of error raised in appellants' brief. *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970).

In opposition to appellee's motion for summary judgment, appellants argued the notes in question were paid, interest provisions in the notes were ambiguous and appellee was estopped to pursue appellants until and unless a deficiency was established. Appellants made a further argument that appellee was estopped from pursuing them on the guaranties because of contrary agreements and representations made by appellee prior to the execution of appellants' guaranties.

■ With regard to appellants' argument concerning payment, it should be noted that appellants asserted only a partial payment and no evidence showing full payment could be found in the record. In contrast, appellee presented undisputed evidence showing appellants were given full credit for all payments made. In opposition to this evidence, appellants introduced the affidavit of Park Lake managing venturer, Mohammad Safdar, which simply stated "I have been unable to determine what interest if any is due and unpaid

because of the manner in which interest is provided for in the note."

This same issue was resolved in *Morgan v. Amarillo Nat'l Bank,* 699 S.W.2d 930 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). In *Morgan,* the defendants argued summary judgment against them should not be granted based on the defendant's affidavits claiming the bank did not provide them with enough information to determine amounts owed on certain notes they had guaranteed. In upholding the summary judgment, the court found that "the showing of a lack of information shows no more than there is an *absence* of summary judgment proof to raise a fact issue to defeat the summary judgment motion...." *Id.* at 938 (emphasis added).

■ The affidavit offered by appellants in the instant case is similar to the affidavit in *Morgan* in its mere assertion of a lack of information on appellants' part and, as such, provides insufficient proof to defeat this summary judgment. Appellants argue that appellee offered no evidence to explain, support, or show how appellee calculated the interest due up to October 1, 1987. The record indicates otherwise. Appellee introduced the affidavit of Brian Roop, a senior vice president for appellee. The affidavit indicated the date on which interest began to accrue and the interest rate at which this sum was calculated. This affidavit differs from appellants' in its far greater specificity. An affidavit by a bank employee which sets forth the total balance due on a note is sufficient to sustain an award of summary judgment. *Sparks v. Cameron Employee Credit Union,* 678 S.W.2d 600, 603 (Tex.App.—Houston [14th Dist.] 1984, no writ).

■ Appellants further allege that the interest provisions of the 1984 note are ambiguous. Ambiguity is an issue to be decided by the court as a matter of law. *R & P Enter. v. LaGuarta, Gavrel & Kirk,* 596 S.W.2d 517, 518 (Tex.1980).

The provision of the note of which appellant complains reads as follows:

[P]ayable at the banking house of Interfirst Bank Fort Worth, N.A., Tarrant County, Texas with interest thereon from

date until maturity at the initial rate of 13.5% per centum per annum; provided, however, the effective INTEREST RATE shall be 1.0% above the Base Rate established by Payee Bank from time to time.

Appellants appear to complain of ambiguity in the 1984 note only. A comparison of the 1984 note to the 1985 note reveals that, apart from actual numbers, the interest provisions are identical. The only perceived difference is that the 1985 note defines "Base Rate" in its text. However, any potential ambiguity in the terms of the 1984 note with regard to the "Base Rate" appears totally clarified by the definition provided in the "Development Loan Agreement" which Park Lake executed as a part of the 1984 transaction. The definition of "Base Rate" provided in the "Development Loan Agreement" is nearly identical to the definition provided in the 1985 note. From appellants' brief, it appears that it is not appellee's definition of "Base Rate" of which appellants complain, but the lack of such a definition in the 1984 note.

The definition of "Base Rate" in the "Development Loan Agreement" which appellants executed as part of the 1984 loan transaction hardly leaves appellants in a position to argue ambiguity on this point. The "Development Loan Agreement" should be construed together with the 1984 note because both documents are part of the same transaction. *Hardeman v. Parish*, 730 S.W.2d 813, 814 (Tex.App.—El Paso 1987, writ ref'd n.r.e.) (court construed a note and contract which were part of the same transaction together).

In support of their argument that the interest provisions of the 1984 note are ambiguous, appellants cite three cases, none of which appear to be on point. *See e.g. Community Savings & Loan Assoc. v. Fisher*, 409 S.W.2d 546 (Tex.1966) (face amount of note contained a sum for interest); *Baker Marine Corp. v. Weatherby Eng'g Co.*, 710 S.W.2d 690 (Tex.App.—Corpus Christi 1986, no writ) (where *statute* sets a rate of interest, courts may not arbitrarily raise it); *Pecos County State Bank v. El Paso Livestock Auction Co.*, 586 S.W.2d 183 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.) (applied to a contract where parties had not agreed on a particular rate).

■ Appellants assert that an additional question of fact existed regarding appellee's ability to pursue appellants' for payment on the notes in question "until or unless a deficiency was established."

However, the exact terms of the guaranties state otherwise. Paragraph eight of the guaranties reads as follows:

> In the event of default by Borrower in payment of the Guaranteed Indebtedness, or any part thereof, when such indebtedness becomes due either by its terms or as the result of the exercise of any power to accelerate, Guarantor shall, on demand and without further notice of dishonor and without any notice having been given to Guarantor previous to such demand of the acceptance by Bank of this guaranty and without any notice having been given to Guarantor previous to such demand of the creating or incurring of such indebtedness, pay the amount due thereon to Bank, at its office in the city appearing below Bank's name in the caption hereof, and *it shall not be necessary for Bank, in order to enforce such payment by Guarantor, first, to institute suit or exhaust its remedies against Borrower or others liable on such indebtedness, or to enforce its rights against any security which shall ever have been given to secure such indebtedness.* [Emphasis added.]

The bank's legal right to seek judgment against appellants pursuant to the guaranties without either foreclosing on the real property or joining the joint venture in the lawsuit, is clear upon reading the terms of the guaranties. Appellee's right to pursue appellants upon default is strengthened by authority which states that one who guarantees payment of a note is treated as a primary party for purposes of liability. *See e.g. Universal Metals & Machinery, Inc. v. Bohart*, 539 S.W.2d 874, 877 (Tex. 1976); *Hopkins v. First Nat'l Bank at Brownsville*, 551 S.W.2d 343, 345 (Tex. 1977) (per curiam); *Ferguson v. McCarrell*,

582 S.W.2d 539, 541 (Tex.Civ.App.—Austin), *aff'd*, 588 S.W.2d 895 (Tex.1979).

 Further strengthening appellee's position on this issue is the fact that appellants, Sims individually and Martin through his company, are joint venturers in Park Lake. A joint venture is a legal entity "in the nature of a partnership." *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704, 709 (1956). Members of a partnership who execute promissory notes are jointly and severally liable on such notes. *McGhee v. Wynnewood State Bank*, 297 S.W.2d 876, 883 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.). With regard to such debts, partners may be sued separately, or the partnership can be sued in its trade name alone. *Id.; see also Rice v. Travelers Express Co.*, 407 S.W.2d 534, 537 (Tex.Civ.App.—Houston 1966, no writ).

 Appellants argue that appellee is further estopped from pursuing appellants for payment of Park Lake's debt on the basis of representations and agreements appellee made to induce them to sign the guaranties.

This argument fails as well. Assuming such representations were made, the parol evidence rule bars such proof to vary the terms of the written guaranties. *Town v. Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 491 (Tex.1978).

In *Broaddus*, the Texas Supreme Court affirmed a summary judgment which was granted against two co-makers of a note. The co-makers claimed that a bank officer told them that the bank would only look to a third co-maker for repayment of the note. The court rejected any evidence of the bank officer's representations to the co-makers because of the parol evidence rule. *Broaddus*, 569 S.W.2d at 492.

Similarly, the representations and agreements of which appellants complain were allegedly made prior to the execution of the guaranties signed by appellants. As such, these representations are not within an exception to the parol evidence rule and any evidence of them was properly excluded. *See id.* For these reasons, appellants' estoppel argument fails. Appellants' first point of error is overruled.

In their second point of error, appellants argue that the trial court erred in granting summary judgment and in finding as a matter of law that no questions of fact exist as to appellee's failure to pursue a party defendant. In support of this argument appellants raise their "suretyship" defense and argue that appellee's failure to pursue Park Lake as a party defendant discharged them on the debt.

For the reasons stated above—the express terms of the guaranties, appellants' primary liability as both guarantors and members of Park Lake—appellants' suretyship argument fails. As explained above, appellants are primarily liable for repayment of the notes in question. Section 3.416(a) of the Texas Business and Commerce Code reads as follows:

"Payment guaranteed" or equivalent words added to a signature mean that the signer engages that *if* the instrument is *not paid when due he will pay* it according to its tenor without resort by the holder to any other party.

TEX.BUS. & COM.CODE ANN. § 3.416(a) (Vernon 1968) (emphasis added).

The text of the guaranties signed by appellants clearly indicates that the guaranties in question were of payment. Further, nowhere in the text of the guaranties does it read "collection guaranteed" or "words equivalent." Section 3.416(c) of the Texas Business and Commerce Code reads "Words of guarantee which do not otherwise specify guarantee payment." TEX. BUS. & COM.CODE ANN. § 3.416(c) (Vernon 1968). Applying the law to the facts of this case, it is quite clear that appellee was not required to pursue the borrower, Park Lake, before pursuing appellants as guarantors.

Accordingly, appellants' second point of error is overruled.

Appellants argued thirdly that the trial court's striking of appellants' counterclaim and denial of leave to file the same was erroneous.

This decision was within the trial court's discretion and may not be disturbed on appeal without a clear showing of abuse of

discretion. *Sigler v. Frost Bros., Inc.*, 555 S.W.2d 813, 815 (Tex.Civ.App.—El Paso 1977, no writ).

Rule 63 of the Texas Rules of Civil Procedure provides that parties may amend their pleadings within seven days of trial only after leave of court is obtained. In the instant case, appellants sought to raise a counterclaim on January 12, 1989, more than one year after interlocutory summary judgment had been entered against them on December 29, 1987.

Appellants assert that Rule 63 does not apply to their counterclaim since it "was *not* an amended pleading." Appellants appear to argue that their counterclaim escapes Rule 63 because it is an original or supplemental pleading.

This argument fails particularly in light of the Texas Supreme Court's recent ruling upon rehearing of *Lee v. Key West Towers, Inc.*, 783 S.W.2d 586 (Tex.1989).

In *Lee*, Nelson and Alice Lee brought a cross-action against Key West and Richard Eid on a promissory note. Key West and Eid filed an original answer to Lee's cross-claim a mere three days before trial raising the affirmative defense of lack of capacity. Eid argued to the appellate court that the trial court had refused leave to file his answer. The appellate court upheld the trial court's decision. On December 9, 1987, the Supreme Court granted the application for writ of error. The court reversed and remanded the decision finding that Rule 63 did not apply to Eid's answer. *Id.* at 588. Later, on June 21, 1989, the Supreme Court granted rehearing on the matter and held as follows:

> We agree with the Lees that Rule 63 applies. If a response to a counterclaim or cross-claim filed within seven days were treated as an original answer, requiring no leave of court, parties would be encouraged to wait as close to trial as possible to file an operative answer. This would not serve the ends of justice. Accordingly, responsive pleadings to counterclaims and cross-claims filed within seven days of trial will be treated as

> answers which amend a Rule 92 general denial.

*Id.* at 588.

By means of their counterclaim, appellants sought to rescind and/or reform the guaranties executed by them in 1984 and 1985 and to recover damages for alleged misrepresentations made by appellee regarding its remedies should Park Lake default. An interlocutory summary judgment was entered for appellee on December 29, 1987, which enforced appellants' obligations under the guaranties. The assertions made in the counterclaim arose out of the same transaction as appellee's claims against appellants for recovery on the notes under their guaranties. At the time that appellants filed their counterclaim seeking to modify the terms of the guaranties, the guaranties had been ruled upon. The court enforced appellants' obligations under the guaranties as written. The matter had been resolved. If appellants wished to bring a claim requiring the guaranties to be reformed or rescinded, the claim should have been brought before this matter was resolved by the court. Applying the reasoning of *Lee*, to allow appellants to wait until such a late date to file their counterclaim would not serve the ends of justice. To allow such claims to be filed would unduly delay the judicial process and encourage less than ethical legal practices.

Rule 97(a) of the Texas Rules of Civil Procedure provides that counterclaims arising out of the same transaction or occurrence and the adjudication of which does not require the presence of third parties over whom the court cannot acquire jurisdiction, are compulsory counterclaims. TEX.R.CIV.P. 97. The counterclaim being thus compulsory, it was required to be filed before the hearing on "Motion for Summary Judgment." TEX.R.CIV.P. 63.

The issues determined on a motion for summary judgment are final, although the judgment is interlocutory. *City of Houston v. Socony Mobil Oil Co.*, 421 S.W.2d 427, 430 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.). After an interlocutory summary judgment is grant-

ed, the issues it decides cannot be litigated further unless the trial court sets the judgment aside or the summary judgment is reversed on appeal. *Id.*

For these reasons, we find that the trial court did not abuse its discretion in striking appellants' counterclaims and in denying leave to file the same. Accordingly, appellants' third point of error is overruled.

 Appellants' fourth point of error asserts that the trial court erred in severing appellee's interlocutory summary judgment.

On July 21, 1989, the trial court severed appellee's actions against defendants John DiPalma, R. Lloyd Martin, Bob Sims, Jr., W.J. Shepherd, Jr., and Ken Taylor. At the time of severance, there were no claims pending between appellee and any of the defendants below. The only claims remaining in the lawsuit were the defendants' cross-claims which had not been further acted upon, apart from filing, as of the date of severance.

As a result of the summary judgment rendered against them, appellants, along with other defendants, were held to be jointly and severally liable to appellee for the loan defaulted upon by the joint venture. Clearly, the outcome of the defendants' cross-actions regarding apportionment of Park Lake debt will have no impact upon appellees' judgments and as such, the claims were properly severed. *See e.g. Rice*, 407 S.W.2d at 536 (severance of cross-claims after summary judgment in plaintiff's favor proper); *Hayes v. Norman*, 383 S.W.2d 477, 480 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.) (severance of appellee's summary judgment on a note from cross- and counterclaims proper); *Jack R. Allen & Co. v. Wyler Textiles, Ltd.* 371 S.W.2d 728, 730 (Tex.Civ.App.—Dallas 1963, no writ) (trial of plaintiff's claim should not be delayed by defendant's cross-claims against a third-party defendant).

Appellants' argument that the severance in question "resulted in a partially final judgment against two of the five defendants remaining in the original suit" fails due to the fact that it is incorrect. At the time of severance, appellee had an interlocutory summary judgment against every defendant remaining in the lawsuit.

Lastly, appellants argue that the trial court severed a single cause of action into two parts. Appellee's cause of action against appellants is separate and distinct from defendants' cross-actions for contribution. *C.S.R., Inc. v. Mobile Crane, Inc.*, 671 S.W.2d 638, 643 (Tex.App.—Corpus Christi 1984, no writ). In *C.S.R.*, the court upheld the severance of a summary judgment in the plaintiff's favor against one defendant, finding that it did not interfere with the separate causes of action that the defendant had against the other parties. *Id.* at 643–44.

For the above-stated reasons, we find that the trial court did not abuse its discretion in severing appellee's summary judgment. Accordingly, appellants' fourth point of error is overruled.

Appellants' final point of error is merely an incorporation of their four preceding points. For the reasons given in addressing these points of error above, appellants' fifth and final point of error is overruled.

The judgment of the trial court is affirmed.